## MacCONNELL v. WOOD.

PATENTS; INTERFERENCE; EVIDENCE; DISCLOSURE.

1. Where a party having evidence within his control does not produce it, it must be presumed that it was unfavorable to his case. (Following *Huff* v. *Gulick*, 38 App. D. C. 334.)

2. In an interference involving the invention of a machine for finishing stereotype plates having means for cooling the plates in the machine, where the senior party conceived the invention January 15, 1906, and filed his application April 6, 1906, and the junior party actually reduced to practice by completing a machine in December, 1906, or January, 1907, but claimed prior conception and disclosure to his attorneys in 1904, and also disclosure to others in connection with the building by him of a machine in the winter of 1905–6, which machine did not possess the cooling device, it was *held*, on a review of the evidence, that it showed no definite prior conception by him of the invention, and that, from his failure to place on the stand as witnesses the parties to whom he claimed to have made such disclosures, the presumption was that their testimony would have been unfavorable to him.

No. 1130, Patent Appeals.    Submitted January 15, 1918.    Decided March 4, 1918.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding awarding priority to the senior party.                                        *Affirmed.*

The facts are stated in the opinion.

*Mr. Cleon J. Sawyer* for the appellant.

*Mr. Louis W. Southgate* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal in an interference proceeding the subject-matter of which relates to stereotype printing plates. The issue is defined in the following counts:

"1. In a stereotype plate finishing machine, the combination of means for first finishing the plate, means for thereafter applying a cooling fluid to the plate, and a support arranged so that the plate will be directed from the finishing means to a position where it may be acted upon by the cooling means and the truth of the finished plate preserved.

"2. In a stereotype plate finishing machine, the combination of a runway or guide along which semicylindrical plates can

be guided on their straight edges, and a finishing mechanism, and a cooling mechanism arranged so that the plates will be guided by the straight edges through the finishing mechanism on and through the cooling mechanism.

"3. In a stereotype plate finishing mechanism the combination with a finishing device having means for freely supporting a plate therein after it is finished, and a series of rollers arranged in alignment with said supporting means. for receiving plates therefrom, of a cooling arch located over said rollers and adapted to cool the plate as it passes along the same."

The Examiner of Interferences awarded priority to Wood as to count 3 and to MacConnell as to counts 1 and 2. On appeal the Board of Examiners in Chief reversed the Examiner of Interferences as to counts 1 and 2, awarding priority as to all counts to Wood. On appeal the Commissioner of Patents affirmed the Board of Examiners in Chief, and from this decision the case was appealed to this court.

The invention is described in the opinion of the First Assistant Commissioner, as follows: "The invention relates particularly to the finishing of stereotype plates and especially to the means for cooling these plates in the machine in which they are finished. Prior to the present invention it was customary to cool the plates by removing them from the finishing mechanism and dipping them in a water bath. This was open to several objections, and in the devices of the parties the plates are supported between the finishing mechanism and the cooling means, so that as the plates are conveyed from the finisher to the cooler they are free from uneven strains and are not distorted from the form imparted thereto by the finisher."

The interference turns upon an issue of fact. Voluminous testimony was given, which it would serve no good purpose to here review. We will content ourselves with a statement of conclusions. It is unnecessary to pursue Wood's case further than was done by the tribunals below. He was accorded by each January 15, 1906, as a date of conception of the invention. This conservative finding is not even questioned by appellant. We may, therefore, let Wood's case rest with this date; since it cannot be questioned that his working drawings of that date,

from which his second machine was built, disclosed a complete conception of the invention of the issue. Whatever conception Wood may have shown in his first machine or by other evidence, we need not consider.

We now come to MacConnell's case. Does he overcome Wood's date of January 15, 1906? It may be inferred from the testimony that MacConnell had a nebulous idea of some sort of a cooling device, but his conduct forbids the conclusion that he had any formulated plan. In the winter of 1905–1906 he built a machine for the Philadelphia Press, a photograph of which is in evidence. While the machine shows a conveyor by which the plates were carried from the finishing mechanism to a point of delivery, it not only possessed no cooling device, but the plates were manually taken from the conveyor and cooled by dipping them in a tank of water, a method concededly old in the art.

On December 7, 1904, MacConnell applied for a patent for a machine which disclosed a device substantially the same as the Philadelphia Press machine. True, he claims that when his application was made he disclosed the present issue to his attorneys, but the attorneys were not put upon the stand to corroborate this statement, and the application itself is strong evidence of what was in his mind on that date. But it is contended that it was his intention to attach the cooling device to the Philadelphia Press machine after its installation. Ericsson, an employee on the Philadelphia Press, testified that MacConnell, in January, 1905, gave him "a sketch that provided a spray, that is, the plate was to be sprayed as it turned over the conveyor, in a half circular arrangement he had drawn, a half cylinder, showing a water trough at the bottom to take up the surplus water and a waste pipe at the extreme end to take the water away. That sketch he gave me, and to the best of my recollection I took it down to Mr. Townsend to show him what we were going to get." Townsend was the manager of the Philadelphia Press, and later had the machine discarded as unsatisfactory. He would certainly have known if an agreement existed at the time of its installation to subsequently attach a cooling device, or if Ericsson showed him a sketch; but, as in

the case of the attorneys, he was not put upon the stand. The unexplained failure to produce these very material witnesses irresistibly leads to the inference that their testimony would have been unfavorable. "Having this evidence within his control, and not producing it, it must be presumed that it was unfavorable to his case." *Huff* v. *Gulick,* 38 App. D. C. 334.

A witness Ruwell, who constructed the Philadelphia Press machine, testifying ten years after the event, makes some indefinite statements of MacConnell's idea to attach a device for cooling the plates by means of a spray while passing over the conveyor, but this evidence, when given the full credit to which it is entitled, amounts only to an indefinite idea in the mind of MacConnell. The fact remains that the Philadelphia Press machine was delivered on January 26, 1906, eleven days after Wood's date, without the device of the issue, and the finished machine is strong evidence of what was in MacConnell's mind on and prior to that date.

Wood constructively reduced the invention to practice by filing his application for a patent April 6, 1906. MacConnell actually reduced to practice by the completion of a machine in December, 1906, or early in January, 1907. MacConnell was the junior party, and has failed, we think, to overcome Wood's case.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.      *Affirmed.*