Rockingham, }
June 26, 1930. }

LENA M. STOCKER *v.* BOSTON & MAINE RAILROAD.

GEORGE F. STOCKER *v.* SAME.

378

*Tuttle, Wyman & Starr, Charles M. Dale* and *John C. Jones, Jr.* (of Massachusetts) (*Mr. Wyman* orally), for the plaintiffs.

*Hughes & Burns* (*Mr. Hughes* orally), for the defendant.

SNOW, J. The correctness of the charge must be determined on the situation presented by the record at the time it was given, or at most before the discharge of the jury. Facts then known neither to

the court nor to the jury are immaterial on that issue. There is, therefore, no merit in the plaintiffs' exception to the refusal of the court to permit proof of facts which had not appeared at the trial.

The exception to the charge was general. It is now claimed, however, that the court in effect directed the jury to disregard any argument which might have been made upon the defendant's failure to call as witnesses the persons noted at the time, or mentioned in its opening, as present at the accident, and thus forbade them to make deductions which were rightfully inferable therefrom. More specifically, the plaintiffs' contentions are in substance (1) that they were entitled to have the jury infer from such failure that the testimony of the witnesses, if called, would have afforded substantive proof in their favor; (2) that they had the right to have the jury consider "that there was other evidence material and favorable to the plaintiff even though her counsel had not actually produced it;" and (3) that the charge negatived not only such inferences but the argument made. These contentions cannot be sustained.

1. The conduct of a party in failing to produce an absent witness may under some circumstances, give rise to an inference that the witness if called would not have been favorable to such party. But in that case evidence of such conduct is persuasive rather than probative, and cannot be invoked as substantive proof of any facts essential to the case of his opponent. *Login* v. *Waisman*, 82 N. H. 500, 502; *Duval* v. *Insurance Co.* 82 N. H. 543, 545-6; *Doe* v. *Lucy*, 83 N. H. 160, 162. See *Arbuckle* v. *Templeton*, 65 Vt. 205, 212; 10 R. C. L., Ev. *s.* 32; 9 Enc. Ev. 975; 1 Jones, Comm. Ev. (2d. *ed.*) *s.* 97. It is of an impeaching character as respects the former's proof and is usually wholly negative as respects the latter's. *Cross* v. *Bell*, 34 N. H. 82, 88. The extent of a party's right to invoke his opponent's failure to call an available witness, when such right exists, is to impair the value of the latter's proofs, and to give greater credence to the positive evidence of the former, upon any issue upon which it is shown that such witness might have knowledge.

*Lane* v. *Manchester Mills*, 75 N. H. 102, 106 is relied upon by the plaintiffs. There the defence was the assumption of risk in support of which the plaintiff had the burden of proving a dangerous workplace and failure to warn. There was evidence of the former, but no direct proof of the latter. It was the theory of the defence that the work-place was not dangerous, the situation fully understood by the plaintiff and no warning necessary. It was held that the fact that no instructions were given the plaintiff was not "an illogical

or violent" inference from the claimed fact that none were necessary. The court there said: "The silence of the defendant's testimony upon this subject, in view of the defence insisted upon, was an evidentiary fact in favor of the plaintiff, which supplied the defect, if any, in the plaintiff's evidence." The language was perhaps unfortunate. The thought apparently intended to be conveyed would have been better expressed had it been said that the silence of the defendant, while not probative, was persuasive of the truth of the inference logically to be drawn from the theory of the defence that no warning was necessary. It was not the silence of the defendant's evidence, but the defence of no danger in view of such silence which gave rise to a reasonable inference that there was no warning.

2. Nor could counsel ask the jury to infer from the defendant's failure to produce the witnesses that, therefore, the plaintiffs had not produced all the evidence favorable to their claim. He could no more argue such an inference from the defendant's conduct than he could have proven the same fact by direct evidence. Had the plaintiffs offered to show that there was unsubmitted evidence in their favor which would strengthen their case it would have been excluded as incompetent. *Chapman* v. *Lee*, 80 N. H. 484, 485. This is no more than saying that proof must rest upon evidence and not upon its absence.

3. The language of the court objected to, in its context, was,— "The cases have been well tried and ably presented and argued by counsel of long experience in the preparation and trial of causes upon both sides, *and you may take it for granted that all of the available evidence material and favorable to either side has been placed before you by one side or the other*, so that you, gentlemen, are as well informed and in as good a position to decide the cases correctly as any jury could be. Obviously trials like the one which we are now concluding are expensive, not only for the parties but also for the county. These are reasons why you should make every reasonable effort to agree upon verdicts, but, of course, the important thing is to decide the cases correctly, and the all-controlling purpose should be to reach such a conclusion in the end as will satisfy your conscience that you have done your full duty without fear or favor, uninfluenced by prejudice or sympathy, and render verdicts which are strictly in accord with the probabilities as shown by the evidence before you." We have italicized the words upon which the plaintiffs particularly rely. This language, when read in its context and construed in the light of the whole charge, constitutes a plain simple statement of

the usual presumption which exists in every case when the evidence is closed, namely, that the counsel for each side had then submitted all the available material evidence favorable to his party. *Mitchell v. Railroad,* 68 N. H. 96, 117; *Lord v. Railway,* 74 N. H. 295, 297. It carried no implication that the jury could take it for granted that either party had produced all the available material evidence favorable to his opponent. Such an instruction would not have been pertinent to any issue in the case.

It has been suggested that the words of the charge, following the language particularly relied upon, namely, "so that you, gentlemen, are as well informed and in as good position to decide the cases as any jury could be" told the jury that as a matter of law they had all the evidence of any account before them, and in effect negatived the argument of plaintiff's counsel that an inference unfavorable to the defendant could be drawn from its failure to produce available evidence. The demerits of this suggestion are evident when the words are read with the preceding language in the same sentence in the light of the purpose of the whole paragraph. The clear meaning of the italicized words of the charge was that the jury could assume that, except as aided by the proof of his opponent, counsel on each side had submitted all the material available evidence favorable to his party. The words "so that" demonstrate that the language they introduced merely gave expression to an inference from the preceding statement and carried no implication not contained therein. In other words, the court by the combined language, told the jury that inasmuch as each party was presumed to have produced all the material available evidence favorable to it no other jury would presumably be better informed, or in a better position to decide the issues between the parties. If there could be any doubt about this, it is set at rest by the restatement of the whole subject in a subsequent portion of the charge, where the court said "We must, I think, be justified in taking for granted that the cases have been well submitted; that is, you gentlemen have before you, as I assume, everything which any further or any other jury could have at any later day,—that there has been submitted to you the facts as the parties believe they exist, in so far as they felt that those facts were material and of importance to their side of the case, so that you, in this position at this time, are just as well qualified, and just as well able, and have the same material, if I may use that term, with which to dispose of these actions that any jury could have at any future time." The two portions of the charge had the single purpose of urging the jury to use every

rightful effort to find a solution, and each invoked the recognized legal presumption that at the close of the evidence each party had produced all the available material evidence favorable to it which it desired to submit. Read together, in the light of the expressed purpose of their use, no fair intendment is to be found from the words of the charge to negative the effect of the plaintiff's argument.

Whether any material inference could be drawn from the defendant's failure to produce the witnesses in question, under the circumstances here presented, has not been considered. The only inference, if any, that could have been drawn was that the testimony of the witnesses if called would not have been favorable to the defendant. This was the purport of the argument as made and allowed. The language of the charge in question was not addressed to the subject of the delimitation of the evidence which might be considered, or of the inferences which could be drawn. It was not calculated to deal with these topics, but was general and merely incidental to the treatment of a disassociated subject. *State* v. *Fogg*, 80 N. H. 533, 536. It was spoken solely with reference to the plenary character of the proofs which was advanced as one of the "reasons" why the jury "should make every reasonable effort to agree upon verdicts." In the context in which it was used it would not ordinarily be construed to negative the argument which had been allowed without objection. It is highly improbable that the jury could have so understood, or could have been misled by it. *West* v. *Railroad*, 81 N. H. 522, 531; *Charrier* v. *Railroad*, 75 N. H. 59, 64; *Saucier* v. *Spinning Mills*, 72 N. H. 292, 297.

Moreover the claims now advanced are not presented by the exception taken. The words of counsel were: "The plaintiff excepts to that part of the charge where the jury is told that they may assume that all the evidence material and favorable to either party has been presented." The language of *Parsons*, C. J. in *Pitman* v. *Merriman*, 80 N. H. 295, 298, is equally applicable here, namely, "This exception definitely informed the court that he had been understood to charge the jury in accordance with its terms and questioned only the legal soundness of the proposition excepted to. As this proposition correctly stated the law, the exception must be overruled. If the language of the charge now appears susceptible of a different construction . . . the matter was not called to the attention of the court. As the objection was not seasonably presented to the court, the plaintiff could not now raise the question under a general exception." *Gardner* v. *Company*, 79 N. H. 452, 457; *Mason* v. *Rail-*

*way,* 79 N. H. 300, 305; *Monteith* v. *Company,* 82 N. H. 175, 176; *West* v. *Railroad, supra,* 531, 532.

There is no merit to the plaintiffs' position that the charge evidenced a prejudicial attitude on the part of the trial justice toward their cause.

*Judgments on the verdicts.*

All concurred.