## RIZZI v. FANELLI.
### No. 698.

Municipal Court of Appeals for the
District of Columbia.
Feb. 4, 1949.

Mark P. Friedlander, of Washington, D. C. (Leroy A. Brill, of Washington, D. C., on the brief), for appellant.

Milton Kramer and Joseph H. Freehill, both of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Joseph A. Fanelli, an attorney, sued Vito Rizzi on a note in the amount of $1251.90 made payable to his, Fanelli's, order. The execution of the note grew out of legal services rendered by Fanelli to Rizzi. The defense was that the note was made under duress. Motions for directed verdict were made by both sides at the close of all the evidence and overruled. The case was submitted to the jury under instructions that if the defendant was found to have signed the note, not of his own free will but because of fear induced by threats by the plaintiff then the note was invalid and they should find for defendant. The instruction on duress included the exact language requested by defendant. The jury returned a verdict for plaintiff.

On this appeal defendant does not raise the question of want of consideration, but assigns a single error: that the trial judge erred in overruling his motion for a directed verdict at the close of all the evidence, because, he contends, from the evidence in the case plaintiff was guilty of duress as a matter of law.

The evidence showed that plaintiff is an attorney at law, specializing in immigration and deportation cases, having formerly been Chairman of the Board of Immigration Appeals. The defendant is an Italian immigrant, unfamiliar with the practice before the courts or the Immigration Board and who has difficulty with the English language. He had illegally entered the United States by "jumping ship" while serving as a sailor on an Italian vessel and deportation proceedings had been initiated against him. He had previously entered the United States and been deported. Before his previous deportation he had been advised that another illegal entry would constitute a felony. He admitted that during his stay in the United States he had been convicted of committing twenty-five crimes against the United States. The defendant, who was engaged as a builder in this city was scheduled to be placed on a ship on August 25, 1947 for his second deportation. On or about July 28, 1947 defendant, through a Mr. Pasqualicchio, an officer of an organization known as "Sons of Italy," engaged the services of plaintiff Fanelli to represent the defendant on an appeal from the deportation order. Under instructions of Fanelli a motion to reopen the deportation proceedings was prepared and filed, together with a motion to stay deportation pending consideration of the motion to reopen. Plaintiff arranged with the Chairman of the Board for such stay and argued the motion to reopen on September 22, 1947. Before that date he had reviewed and studied all the files in the proceeding. Plaintiff testified that he advised the defendant the fee for his services was $750 to be paid immediately, and an additional $750 contingent upon the setting aside of the outstanding deportation order. On September 24, 1947 plaintiff set forth these terms and certain others in a letter which he sent both to defendant Rizzi and to Mr. Pasqualicchio. A bill on the basis of these terms was also sent to defendant and to Mr. Pasqualicchio; neither of them made any response to either the letter or the bill, but $250 was paid to plaintiff. (The statement of evidence recites that it was paid by defendant, while a letter of Fanelli, which was in evidence states that $110 was paid by Rizzi and $140 by Pasqualicchio.) On December 29, 1947, the Board of Immigration Appeals set aside the deportation order and reopened the case for further hearings. On December 30, the plaintiff in writing requested the defendant to call at his office on January 5, 1948 and prepared a thirty-day promissory note dated January 5, 1948. Plaintiff discussed the question of payment with the defendant by telephone on January 6, 1948. On January 7, 1948 plaintiff wrote to defendant the letter on which the claim of duress is based, and which we quote in full in the margin.[1] On January 9, 1948, plaintiff

---

[1] "January 7, 1948
Mr. Vito Rizzi
504 F Street, N.E.
Washington, D.C.
Re: Your Deportation Case
Dear Sir:
I am sorry for you that you have not answered or paid my bills for $500 owing since last September. This $500 is what is still owing of the agreed upon $750 fee certain payable at the beginning of the case in September.
I am sorry for you that you have not answered in any way my letter of December 30, 1947, asking you to come to see me.
I wanted to tell you that the Board of Immigration Appeals has withdrawn the deportation order in your case, and ordered a further hearing on your good moral character. In accordance with our agreement you now owe me an additional $750,

which was contingent on the withdrawal of the deportation order. There is also $1.90 in expenses payable by you.
This make a total of $1,251.90 you owe me. I do not plan to wait for it.
Your silence leaves me no alternative. You force me to sue you in court. That I am going to do. As soon as I do, your deportation will follow—of this I am certain.
I am very sorry about this for you. But do you see anything else I can do? I shall not wait long for your answer.
Sincerely yours,
Joseph A. Fanelli (signed)
CC: Mr. Leonard H. Pasqualicchio
P.S. I see no reason to change this in the light of telephone conversation last night. The only answer from you that interests me is payment.
J. A. F."

called defendant's office and plaintiff repeated to defendant that if he did not sign the note, or pay the fee due, he was going to sue him, and if he did sue him the defendant would be deported; that he was certain that deportation of the defendant would follow filing of such a suit. Plaintiff testified that he assured the defendant that he (plaintiff) would do nothing to have the defendant deported but that he believed that if suit were brought against the defendant for payment of a debt owed, the defendant would be deported. The promissory note was then executed by the defendant. Defendant stated that because of the letter and the statement of the plaintiff he feared he would be deported if he did not sign the note. There was further evidence that after the execution of the note defendant objected to it through his friend Pasqualicchio and an attempt was made to adjust the dispute without regard to the terms of the note. Plaintiff withdrew from the case and made no further statement and took no further action against defendant beyond instituting suit. Defendant has not been deported.

The modern view is that any threat which deprives a party to a contract of the free exercise of his will constitutes duress.[2] It is duress if it is a wrongful threat "that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment."[3] What constitutes duress is a matter of law; but whether or not duress existed in the particular transaction is usually a question of fact.[4] Of course, where only one valid inference can be drawn from the evidence the existence of duress may be said to be, practically speaking, a matter of law.[5] But as is evident from the evidence stated

above and from our discussion which follows such a situation is not before us here. Defendant said he signed the note in fear that if he were sued he would be deported. Plaintiff on the other hand testified that he had assured Rizzi that he would do nothing to have him deported. "Acts or threats cannot constitute duress unless they are wrongful,"[6] and it was not wrongful, and therefore not duress for plaintiff to threaten to file a law suit to collect the fee he claimed. Dick v. Marx and Rawolle, Inc., 55 App.D.C. 267, 4 F.2d 879; Board of Trustees, etc., v. O. D. Wilson Co., 77 U.S.App.D.C. 127, 133 F.2d 399; Portland Hotel Corporation v. Fidelity Storage Corporation, 77 U.S.App. D.C. 282, 134 F.2d 57; Manigault v. S. M. Ward & Co., C.C.D.S.C., 123 F. 707, affirmed Manigault v. Springs, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274.

Also to be considered was the fact that Rizzi had the benefit of conferring with Pasqualicchio, who because of his position with the "Sons of Italy," and his familiarity with the case, was in a good position to advise him. Under all these circumstances and the inferences to be drawn therefrom we think it was for the jury to say whether Fanelli's "threat" constituted duress.

Apart from the "threat" in plaintiff's letter of January 7, 1948 another argument is advanced to support appellant's theory of duress in securing the note which is in suit. The rule is recognized in this jurisdiction that there is a presumption of overreaching or duress in contracts regarding compensation between attorney and client after that fiduciary relationship has once been established.[7] The rule is recognized in other jurisdictions as well.[8]

---

[2] 17 C.J.S., Contracts, § 168; 17 Am. Jur.; Duress and Undue Influence, § 11.

[3] Restatement, Contracts, Chap. 16, §' 492.

[4] See cases listed at 17 Am.Jur., Duress and Undue Influence, § 31, note 3. See also Rosenberg v. Howle, D.C.Mun.App., 56 A.2d 709; 76 W.L.R. 228.

[5] O'Toole v. Lamson, 41 App.D.C. 276; Rosenberg v. Howle, supra, Note 4.

[6] Restatement, Contracts, Chap. 16, § 492.

[7] Willoughby v. Mackall, 1 App.D.C. 411, 417. See also Whiting v. Davidge, 23 App.D.C. 156, and Stanton v. Haskins, 8 D.C. 558, 1 MacArthur 558, 29 Am.Rep. 612.

[8] Neary v. Markham, 10 Cir., 155 F.2d 485; Ridge v. Healy, 8 Cir., 251 F. 798; Skeen v. Peterson, Utah, 196 P.2d 708; Lady v. Worthingham, 57 Cal.App. 557, 135 P.2d 205; Moore v. Rochester Weaver Mining Co., 42 Nev. 164, 174 P.2d 1017, 19 A.L.R. 830; Sullivan v. Morey, 326

■■ But this presumption, like others, requires a directed verdict only when there is no evidence to rebut it. As Wigmore has pointed out,[9] when there is some evidence offered against a presumption, it is for the trier of facts to consider it and give it such weight as seems just. We cannot say that there was no evidence to rebut the presumption. Fanelli's assurance that he would do nothing to have Rizzi deported, the benefit of Rizzi's conferring with Pasqualicchio, the fact that though the suit was filed Rizzi has not been deported, together with the fact that the note sued on was (according to the uncontradicted evidence) for the balance of a fee specifically fixed by plaintiff months before, all tend in some degree to overcome the presumption on which Rizzi places his reliance to show that the contract was invalid. Hence it was entirely proper to submit the case to the jury, so that the presumption of overreaching and the evidence tending to rebut it might be considered together. The jury, after seeing the witnesses and hearing the testimony, found as a matter of fact that there was no duress. We cannot as a matter of law say their finding was erroneous.

Affirmed.

CLAGETT, Associate Judge (dissenting). While the opinion of the court in this case is highly persuasive, I am unable to agree with the conclusion reached. I can not escape the view that under the circumstances the letter sent by appellee Fanelli to appellant Rizzi constituted duress or undue influence as a matter of law. Fanelli was not only Rizzi's attorney, but it is particularly significant that Fanelli was a former chairman of the Board of Immigration Appeals, the very Board before which Rizzi's case was pending. Under such circumstances, Fanelli told Rizzi verbally and wrote him on January 7, 1948, that "You force me to sue you in court. That I am going to do. As soon as I do, your deportation will follow—of this I am certain." Admittedly, it was as a result of these threats that Rizzi signed the promissory note sued on. The American Law Institute's Restatement of the Law of Contracts, Vol. 2, § 497, states: "Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter is induced by undue influence and is voidable."

In the comment under this section it is stated that, "The protection given parties of the class included under the rule stated in this Section is broader than that given where parties bear no such relation to one another. Duress between such parties has the same effect as between other parties, but unfair persuasion without fear is enough to constitute undue influence within the rule stated in the Section." Among the relationships stated to be included within such rule is that of attorney and client.

Duress is defined in the Restatement (Vol. 2, § 492) as "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement."

Here Rizzi, an Italian immigrant, who had difficulty with the English language and who had already been deported once from the United States, was dealing with his attorney, a former chairman of the Board having Rizzi's case under consideration. Under such circumstances, can it possibly be said that the contract between the parties was entered into freely? And yet one of the fundamental requirements for a valid contract is mutual manifestation of assent by the parties.

To me it seems entirely clear that the promissory note given for the full amount

Ill.App. 553, 62 N.E.2d 483; In re Howell, 215 N.Y. 466, 109 N.E. 572, Ann. Cas.1917A, 527; Stiers v. Hall, 170 Va. 569, 197 S.E. 450; Stern & Swift v. Hyman Bros., 182 N.C. 422, 109 S.E. 79, 19 A.L.R. 844.

9  9 Wigmore, Evidence, §§ 2490-2491.

of Fanelli's bill and extracted under the circumstances here present was given under duress or undue influence as a matter of law.[10] The opinion of the court states, in effect, that the verdict of the jury that there was no duress prevents our determining that there was duress as a matter of law. This, it seems to me, is a non sequitur. Furthermore, the opinion correctly states the rule that there is a presumption of overreaching or duress in contracts regarding compensation between attorney and client after the relationship has once been established. I do not agree, however, that there was any substantial evidence offered against this presumption. Certainly the fact that Rizzi has not yet been deported was not such evidence.

I believe the judgment below should be reversed.

---

[10] See 2 Restatement, Contracts, § 493, illustration 14 under clause (d).