## BOWLES v. MARSH.

### Nos. 1063, 1064.

Municipal Court of Appeals for the District of Columbia.

Submitted May 21, 1951.

Decided June 20, 1951.

136

Norman S. Bowles, Jr., Washington, D. C., for appellant.

Louis M. Denit, Thomas S. Jackson, A. Leckie Cox and P. Baxter Davis, all of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Claiming to be a holder in due course, Clyde A. Bowles brought two suits on a series of three promissory notes, all dated the same day. The first suit covered a note for $1500 and one for $1000; the second covered a note for $2500. Both suits named as defendants Bertha A. Marsh as maker and James F. Patrick as the payee-indorser from whom plaintiff claimed to have acquired the three notes. Patrick defaulted. Defendant Marsh defended on the ground that the notes had been obtained from her without consideration and by the false and fraudulent representations of Patrick, and that Bowles had knowledge of these facts when he acquired the notes from Patrick. Plaintiff filed a motion for summary judgment against Marsh which was denied, and the cases proceeded to trial on the issues between those two parties.

On motion of defendant the cases were consolidated "for further proceedings herein and for trial." The trial was had before a jury, the evidence being in the form of plaintiff's earlier deposition and his testimony in open court, the deposition of Patrick who was not present, and the deposition of Miss Marsh who, because of advanced years and ill health, as was shown by medical testimony, was unable to attend the trial in person. Certain exhibits were also in evidence.

The jury rendered a verdict limiting plaintiff's recovery to $2500 without interest "on both cases together." From the judgment which followed plaintiff has appealed. He has assigned some sixteen errors, of which we shall discuss only those which seem of substance and which have been briefed as required by our rules.

His first assigned error is that it was wrong to consolidate the two suits for trial. We note first that the actions were not made one but that each retained its separate status and was consolidated with the other merely for the purpose of a "joint hearing or trial" as authorized by Municipal Court Rule 38(a), Fed.Rules Civ.Proc. rule 42(a), 28 U.S.C.A. In these two cases the parties were the same and so were the issues, for by the pleadings as amended the answers in both cases asserted the same defenses. In the interest of sound and efficient administration of justice, the trial court properly ordered the cases tried together. Indeed there seems to have been no reason for separate trials. Appellant presses upon us the argument that the consolidation was improper because the total claim in the two suits exceeded the $3000 jurisdiction of the Municipal Court. But as we have noted the two claims were not fused into a single action. By the very terms of the consolidation

they retained their separate and distinct status and were so treated on the docket and other records of the trial court and throughout the proceedings.

■ Next, appellant criticizes the manner in which the verdict was rendered. As we have seen, the jury through its foreman announced that its verdict was for $2500 "on both cases together." We think it would have been better procedure for the trial judge to have required the jury to render separate verdicts in the two cases. For the judge had told the jury that they were to consider each note as a separate claim. This was the correct approach and it would have been preferable to have their verdict reflect their decision on each case separately. But counsel for plaintiff did not request that the jury be instructed to that effect or that they be sent back for that purpose. He merely said "that the verdict might be a little bit confusing," and after some discussion asked for a poll of the jury. After the poll was taken the trial judge asked, "Is there anything further, Mr. Bowles?," and counsel answered, "No, nothing further." Furthermore, any irregularity in the rendition of the verdict was corrected, with the acquiescence of plaintiff's counsel, by the form in which the judgment itself was entered. An order prepared after conferring with counsel for both parties directed that the clerk enter judgment on the verdict in both cases with cross-references, seemingly to make sure that there would be no misunderstanding about the extent of plaintiff's recovery. This order bears the indorsement over the signature of appellant's counsel, "No objection to this procedure." This amounted to a waiver of his right to complain of the form of the verdict and we rule that there is no basis for the error assigned in connection therewith.[1]

■ We next consider appellant's contention that he was entitled to favorable action on his motion for summary judgment. Under the rule set forth in Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766, once it is determined that there is an issue of fact, summary judgment should not be granted; and in determining if there is an issue of fact all doubts are to be resolved against the granting of summary judgment. Here the trial court, in considering the motion, had before it defendant's answers charging that the notes were obtained from her without consideration and by the payee's fraud and as part of a fraudulent scheme, and that plaintiff knew of such scheme when he acquired the notes from the payee. Also before the court were the depositions of Bowles and Patrick, as well as that of defendant Marsh. Reading these together with the pleadings, we rule without hesitation that the trial court was right in refusing to grant the plaintiff summary judgment.

Judged by these tests it was also proper to deny plaintiff's motion for directed verdict made upon completion of all the evidence. The factual conflict was even more marked at the trial than in the pleadings. It is true that the evidence did not establish to a demonstration Patrick's fraud and Bowles' knowledge thereof; but the law does not require such absolute proof in cases of this kind. As was recently said, "The fact that the evidence * * * was circumstantial does not detract from its probative force. Fraud is frequently not susceptible of direct proof because of its clandestine nature." Thomas v. Doyle, U.S.App.D.C., 187 F.2d 207, 208. That ruling followed the same reasoning as the early case of Dewalt v. Doran, 21 D.C. 163, 180, where it was said, "The only proof usually attainable is derived from the assembling of a variety of incidents, each perhaps trivial in itself, but which, by an induction of particulars, may suffice to bring conviction to the minds of the court." In still

1. Although the amount of the judgment ($2,500 on notes totaling $5,000) is not specifically raised by appellant, we note in passing that though Patrick said he gave his two notes of $2,500 each in exchange for the three notes of Miss Marsh, she testified that Patrick gave her only one note for $2,500. Further-

more, the notes were bought separately by plaintiff, and the jury might have concluded he was a holder in due course of one or more but not of all. Under the circumstances, it was not improper for the jury to return a total verdict of less than the face amount of all the notes.

another case the court recognized that, "the sole source for inference of either honesty or deceit may be the circumstances of the transaction." Wynne v. Boone, D. C.Cir., 191 F.2d 220, 222.

■ In the case before us there were circumstances established by evidence which could have given rise to a reasonable inference that the alleged holder, Bowles, had prior knowledge that there was something suspicious about the notes and the manner in which they were obtained by the payee Patrick. There were also discrepancies between the testimony of Patrick and that of Bowles as to how much Bowles paid for the notes, and in what manner. There was also more than a little vagueness in Bowles' testimony and what might in the eyes of the jury have amounted to self-contradictions on his part. See Wynne v. Boone, D.C.Cir., 191 F.2d 220; Johnson v. Hawkins, D.C.Mun.App., 81 A. 2d 467. In addition, Bowles' only record of the transaction consisted of random and somewhat cryptic entries in a small diary concerning a number of loans and other personal transactions between him and Patrick. "All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced." Quock Ting v. United States, 140 U.S. 417, 421, 11 S.Ct. 733, 735, 35 L.Ed. 501, cited in Wynne v. Boone, supra. We rule that the trial court did not commit error in deciding that the case should be submitted to the jury.

■■ We do not agree with appellant's contention that the court should have rejected the deposition testimony of defendant. Her physician had testified in open court (and was subjected to cross-examination) that she was 72 years old, had already suffered one stroke, and that appearance in court might have fatal consequences for her. These circumstances fully justified the trial court in permitting her deposition to be read at the trial. Municipal Court Rule 24(d) (3). Likewise the deposition of Patrick was properly received. His testimony was essential to defendant's case and though a summons was issued, it was not served and he did

not appear. Therefore the reading of his deposition was also authorized under Municipal Court Rule 24(d) (3). Moreover the record shows that plaintiff not only did not object to the reading of either of the depositions, but acquiesced therein.

■ Appellant cites several errors he says the trial judge made in granting and refusing requested instructions. Many of these claims of error are not supported by any argument as required by our Rule 35(5), nor by citations, and appellant is therefore not entitled to have us consider them. See Poole v. Hurlbert, D.C.Mun. App., 67 A.2d 266; Phucas v. Washington-Virginia-Maryland Coach Co., D.C.Mun. App., 76 A.2d 59. Three of appellant's prayers (Nos. 6, 12, and 15) were refused because they did not conform to the evidence and we agree with the action taken thereon. In another instruction, No. 14, appellant proposed to have the judge tell the jury that defendant was bound by the answers she had filed to plaintiff's complaints. We note that written into this instruction were misstatements of fact which justified its refusal. Appellant's prayer No. 15 would have had the judge tell the jury that they must believe certain testimony of the plaintiff because it was uncontradicted. Such is not the law, as we recently held in Johnson v. Hawkins, D.C.Mun.App., 81 A.2d 467. Appellant says prayer No. 7 was rejected, but the record shows it was read verbatim to the jury. As to plaintiff's prayer No. 3, the judge substituted for it the Negotiable Instrument Law definition of a holder in due course, plaintiff acquiescing. Another of appellant's prayers (No. 13) was properly rejected because it embodied considerable comment on the evidence. Three other prayers, Nos. 9, 10 and 11, tendered by appellant, were based on the theory that by offering Patrick's deposition, defendant made him her own witness. But it is plain that defendant was not so bound. Municipal Court Rule 39(a), like FRCP rule 43, authorizes a party to call an "unwilling or hostile witness" without losing the right to lead or contradict or impeach him. But aside from the rule, it is the law that in cases of this kind no such re-

striction operates against a party charging fraud. Dumas v. Clayton, 32 App.D.C. 566.

Turning to certain prayers tendered by defendant, (Nos. 2, 10 and 11) to the granting of which appellant here excepts, no objection was noted thereto in the trial court as required by Municipal Court Rule 47 and by our Rule 13, and we are not called upon to review them.

Generally criticizing prayers granted and the charge as given, appellant complains that the trial judge did not correctly explain the burden of proof which governed in the case. We do not agree. Among other things the judge pointed out that every holder of negotiable instruments like these is "deemed prima facie to be a holder in due course; but, if it is shown that the title of any person who had negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." As to knowledge of infirmity in the instruments the court charged that it can never be assumed but must be shown clearly, mere suspicion being insufficient to upset the proof offered by plaintiff that he is a holder in due course. The judge explained that title to the notes was defective if the jury found that Patrick had obtained the notes by fraud; but that the ultimate purchaser could still recover unless he had actual knowledge of such infirmity or defect or of such facts that his taking the notes would amount to bad faith. These instructions were in substance taken from Code 1940, 28–409, and are entirely in accord with the case law in this jurisdiction. Bowen v. Mount Vernon Sav. Bank, 70 App.D.C. 273, 105 F.2d 796; Zier v. Eastern Acceptance Corporation, D.C.Mun. App., 61 A.2d 106, 76 W.L.R. 1026.

The question of value was incorporated into the charge as part of the court's definition of a holder in due course, and was also taken from the Code. It was explained that inadequacy of price alone is not sufficient to put a party on notice of some irregularity; that it may be considered along with other circumstances in determining if a subsequent purchasing party should have been put on inquiry of irregularities. This was a correct statement of the law. See Zweig v. Schwartz, D.C.Mun.App., 31 A.2d 857.

Likewise correct was the court's charge on the subject of fraud. The elements of fraud were carefully explained and the jury told that: "The fact that evidence to prove fraud is circumstantial does not necessarily detract from its probative force. Fraud is frequently not susceptible of proof because of its very nature. It is often established by legitimate inferences arising from circumstantial evidence." This is in harmony with the decisions we have cited above.

With commendable care and patience the trial judge conducted long discussions with counsel concerning the proffered instructions and the proposed charge to the jury, affording every opportunity to both sides to present their theory of every legal principle involved. Our study of the charge as a whole satisfies us that it covered every feature of the litigation fairly and fully and in accordance with established legal principles.

Judgments affirmed.