**Joseph W. BARLOW, Appellant,**

v.

**D. Page CORNWELL, Appellee.**

**No. 1810.**

Municipal Court of Appeals for the District of Columbia.

Argued July 2, 1956.

Decided Aug. 20, 1956.

Rehearing Denied Sept. 6, 1956.

HOOD, Associate Judge.

Appellee, a former partner of Jack Frost Company, was sued on an indebtedness incurred by the firm prior to his retirement. The trial court held that the creditor was estopped to assert his claim against appellee. The creditor has appealed.

It was adduced at trial that in February 1954, the partnership was encountering financial difficulties, which were viewed by appellee as being sufficiently critical to warrant dissolution of the firm. His copartner, Frost, on the other hand, was optimistic and believed that the firm could survive. This divergence of opinion resulted in a creditors' meeting at which time the principal creditors, including appellant, were informed of the financial condition of the partnership and were advised of appellee's intention to retire. A compromise agreement was thereupon effected between the firm and its creditors whereby the latter agreed to accept 40% of the total amount of their respective claims as full and complete satisfaction. This agreement was signed by appellant on February 19, 1954.

On February 15, 1954, appellee had ceased to actively participate in the firm's affairs, and Chadick had taken his place. Although a dissolution agreement had been drawn up, presumably on the 15th of February, appellee had not signed it and was not to sign it or release the assets of the firm until such time as Frost had procured receipts from the principal creditors reflecting full payment by the firm under the compromise agreement.[1]

By March 1, 1954, the date on which the compromise agreement was to terminate, Frost and Chadick had satisfied all of the creditors with the exception of appellant. On that date Frost approached appellant and requested him to make a notation on

Paul Lee Sweeny, Washington, D. C., for appellant.

Ward H. Oehmann, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

1. Chadick had apparently agreed to offer financial assistance to the firm and to become a partner of Frost as soon as dissolution became final. Appellee testified that Chadick and Frost were to find the means of paying off the creditors, and that he was only interested in receiving receipts of payment under the compromise agreement so that he could safely get out of the firm.

the compromise agreement that his claim had been paid. He was told by Frost that the firm did not have sufficient money to satisfy his claim, and that unless such a notation was made, a dissolution of the partnership would be impossible and he, Frost, would be unable to realize his intention of taking over the business. Appellant refused to note that his claim against the partnership had been "paid", but did write across the bottom of the agreement: "Claim has been satisfied." He testified that Frost told him that was the only way he could be paid. Appellee testified that upon receipt of the compromise agreement, noted as indicated above, and without knowledge that appellant had in fact not been paid, he turned over the assets of the firm to Frost and signed the dissolution agreement. Dissolution became legally effective in April 1954. In June appellant sued Frost on the firm's indebtedness and recovered a judgment of $1,441.28. Execution on that judgment realized only $240.16. This suit was brought in December 1955 for the deficiency.

On this set of facts, the trial court found that appellant, when he indicated in writing that his claim had been satisfied, knew that it would be relied upon by appellee and that on the strength of it he would sign the dissolution agreement and release the firm's assets; that such action revealed an intention on appellant's part to release appellee and look to Frost for satisfaction; and that appellant could not thereafter reassert his claim against appellee.

▇▇▇▇ Appellant's main contention is that the trial court committed error in holding that he was estopped to maintain the suit against appellee. First, he claims that because estoppel was not pleaded affirma-

tively it was waived and appellee could not rely upon the doctrine at trial in bar of recovery.[2] Although appellee's answer did not specifically state that estoppel was an element of the defense, its contents clearly apprised appellant that he would be confronted with such a defense and that he would be compelled to meet it.[3] Technical noncompliance with Rule 8(c) should not operate to deprive a party of a defense, when there is no showing that the pleadings have misled the opponent. This is especially true in view of the directive of Municipal Court Rule 8(f) that "all pleadings shall be so construed as to do substantial justice." The record reflects that appellant did not claim surprise when the issues at trial narrowed and it became obvious that the doctrine of estoppel was being relied upon. Under the circumstances, we hold that appellant is in no position to now claim that the defense of estoppel was waived.[4]

Appellant contends that even if the trial court was correct in giving consideration to the doctrine of estoppel, there was no justification in its application. In other words, appellant's claim is that the facts did not create an estoppel situation, and in support thereof he argues that: (1) There was no evidence that appellee acted to his detriment in reliance upon appellant's written notation that his claim had been satisfied. (2) Appellee had actual knowledge of the circumstances incident to the placing of the notation on the agreement. (3) Even if he did not have actual knowledge of those circumstances, the knowledge of his copartner, Frost, will be imputed, by law, to appellee. (4) The transfer of the firm's assets by appellee to Frost, before legal dissolution of the partnership, was, under the District of Columbia Bulk Sales Law,[5] a

2. Municipal Court Rule 8(c).

3. The third paragraph of appellee's third defense reads: "As a condition precedent to the dissolution of said partnership and the release of the assets * * * defendant demanded and received a receipt * *

executed by plaintiff, that plaintiff had received and accepted the sum of $576.51 in full settlement of his claim * * *."

4. Cf. Wright v. McCann, D.C.Mun.App., 122 A.2d 334.

5. Code 1951, § 28–1701 et seq.

fraudulent transaction and void as to all creditors, including appellant. (5) There was no evidence that appellant placed the notation "Claim has been satisfied" on the agreement with intent that it be relied upon by appellee.

■ Examination of the record shows that the trial judge had ample grounds for finding appellee relinquished control of the partnership assets and any right which he may have had in directing the affairs of the firm in reliance upon appellant's express release.

■■ Appellant's argument that appellee had actual knowledge of the circumstances surrounding the placing of the notation on the compromise agreement is predicated on his own testimony that he had called appellee that evening and told him what had transpired. He argues that appellee's statement that he did not recall receiving a telephone call from appellant but could not deny that the call in fact had been made, had no probative value and the trial court should have held as a matter of law that such a telephone call was made and that appellee was advised of the true facts. However, we have held that a trial judge may disregard the testimony of a witness even in the absence of direct conflicting testimony. See Johnson v. Hawkins, D.C.Mun.App., 81 A.2d 467, citing Wynne v. Boone, 88 U.S.App.D.C. 363, 191 F.2d 220; see also Bowles v. Marsh, D.C. Mun.App., 82 A.2d 135.

■■ It is true, as appellant says, that generally notice to, or knowledge of, an acting partner with respect to any matter relating to a transaction within the ordinary scope of the firm's business is notice or knowledge as to all the partners.[6] This rule however is not without exception. It has been held that " 'Where one member is acting beyond his power, or is conducting a fraud on his partners, or is the person whose duty it is to give his firm notice of what he himself has done, in all such cases notice on his part is not equivalent to no-

tice by them.' " Bienenstok v. Ammidown, 155 N.Y. 47, 49 N.E. 321, 324, quoting from Lindley on Partnership. When Frost requested appellant to mark his claim paid or satisfied, Frost was acting primarily in his own interest and not in the interest of the partnership. He was seeking the means of taking over the business and disclosure of the true facts to appellee would have defeated Frost's scheme. Under these circumstances Frost's knowledge cannot be imputed to appellee.

■ Appellant's contention that the transfer of the partnership assets by appellee to Frost was fraudulent under the terms of the Bulk Sales Law is without merit. The Bulk Sales Law has no applicability to a situation of this kind.

■ The record discloses sufficient evidence to support a finding that appellant had knowledge that his notation "Claim has been satisfied" would be relied upon by appellee. On direct examination appellant testified:

> "Mr. Frost came in and had this paper, told me that he and Mr. Cornwell (appellee) were dissolving the partnership; they didn't have the money to pay all the creditors; I was the only one they didn't have enough money to pay and, if I would sign that slip marked 'Paid in Cash,' that that would help the dissolution of the partnership whereby he could take over for himself."

In view of appellant's own testimony, the trial judge was entitled to make a finding that appellant knew his notation would precipitate action on the part of appellee.

■ Our conclusion is that the facts of this case gave rise to an estoppel situation and the application of the doctrine by the trial court was not erroneous. Other claims of error require no discussion.

Affirmed.

---

6. See 68 C.J.S., Partnership, § 175.