**Juanita Kennedy MORGAN, Appellant,**

v.

**George GILMER, Appellee.**

**No. 3432.**

District of Columbia Court of Appeals.

Argued March 2, 1964.

Decided April 30, 1964.

Rehearing Denied May 26, 1964.

Juanita Kennedy Morgan, pro se.

Erias S. Hyman, Washington, D. C., entered an appearance for appellee, but filed no brief.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired.)

MYERS, Associate Judge.

Appellee sued Mrs. Morgan for default in payment of a promissory note signed by her. After trial without a jury, judgment was entered for appellee from which the maker of the note has appealed.

Mrs. Morgan, a real estate broker and law school graduate, was the only witness who testified at the trial. According to her testimony, on August 16, 1960, one John D. Chamberlin, representing himself to be a Chicago private detective, and another man dressed in the uniform of the Metropolitan Police Department both wearing guns, appeared at her office with papers for the arrest of her brother, Kenneth Kennedy, who was then present. Chamberlin informed her that appellee had been a delivery man for the Walgreen Liquor Store in Chicago, that he had been indicted for stealing and transporting liquor, and that her brother was

implicated. The brother, who had been in the liquor business in Chicago with another brother, Herman Kennedy, promptly denied he was involved. He admitted he had traded with Walgreen's but denied he had ever received any liquor for which he had not paid.

In response to her inquiry as to what could be done, appellant was informed that if she would pay $5,000 they would let her brother remain in Washington. Upon her protest, this demand was ultimately reduced to a note for $1,500, payable in a year or eighteen months. The money was to be used, she was told, for legal or other expenses to defend the case in Chicago and to protect the interest of her brother. The men represented that unless she signed a note for this amount, they would be forced to take her brother back to Chicago. The brother told her then that she could sign the note if she wanted to do so, but that he would just as soon return to Chicago to defend himself. In any case, she signed the promissory note for $1,500 payable on March 1, 1962, to John D. Chamberlin at a named address in Chicago. It was subsequently endorsed by Chamberlin and delivered to appellee. There was no attempt or threat by the men to use their guns, but Mrs. Morgan stated she was in fear of them. Later appellant learned that neither Gilmer nor her brother had been indicted in Chicago. At the trial, she did not call her brother as a witness although he was in the city and available. She explained she did not think it was necessary.

In interrogatories answered by appellee under oath, inter alia, he stated that the note had been executed for a debt owed him by appellant's brother Kenneth Kennedy and delivered to him by his agent, John D.

Chamberlin; that it had not been obtained by any promise not to arrest or prosecute her brother; and that there had been no conspiracy between him and Chamberlin. An affidavit by Chamberlin, in opposition to a motion to dismiss the complaint, asserted that appellant had voluntarily executed the promissory note "for a valid and subsisting debt for the benefit of my principal * * * George Gilmer."

Appellant primarily contends that the trial judge erred in not finding that duress and misrepresentation by Chamberlin and his companion forced her to sign the note and therefore vitiated any agreement to pay.

The critical issue of fact was the reason for the execution of the promissory note by appellant. Was the consideration a discharge of a valid debt owed by appellant's brother to George Gilmer, for whom Chamberlin was acting as agent, or was there in fact duress and fear which forced her to sign and execute the note?[1]

We have long recognized the principle that it is the exclusive function of the trial judge to determine the cogency and persuasiveness of the evidence and to weigh it for credibility, contradictions, reasonableness and evasiveness.[2] Although he cannot refuse credence to testimony of a witness whose credibility is in no way impeached and whose testimony is reasonable and free from suspicion, he is not bound to accept the uncontradicted testimony of an interested party to the action.[3]

That the trial judge refused to accept appellant's testimony concerning the purpose of the promissory note as credible and true is an inescapable conclusion. Having admitted the execution of the note, ap-

1. Meisel v. Alexander, D.C.Mun.App., 111 A.2d 873; Rizzi v. Fanelli, D.C.Mun. App., 63 A.2d 872.

2. Miller v. Imperial Insurance Incorporated, D.C.App., 189 A.2d 359, 360; Kuzminsky v. Wagner, D.C.Mun.App., 87 A. 2d 411, 412.

3. Tan Top Cab Company v. Shiller, D.C. Mun.App., 125 A.2d 68, 70; Barlow v. Cornwell, D.C.Mun.App., 125 A.2d 63, 67; Bowles v. Marsh, D.C.Mun.App., 82 A.2d 135; Johnson v. Hawkins, D.C. Mun.App., 81 A.2d 467, 469, citing Wynne v. Boone, 88 U.S.App.D.C. 363, 191 F.2d 220.

689

rr rrrr 

pellant had the responsibility to present as an affirmative defense acceptable proof that she had been induced by duress and misrepresentation to sign it. This she did not do, although her brother, who had full knowledge of the facts, could have been called to testify.[4] His absence no doubt had a bearing on her credibility and upon the weight to be given her testimony.[5]

As we cannot say that the evidence was so compelling as to entitle appellant to a ruling in her favor on the issue of duress and misrepresentation invalidating the note given by her, we hold that the conclusion of the trial judge was neither plainly wrong nor without evidence to support it.[6]

Affirmed.

HOOD, Chief Judge (concurring).

I concur fully in Judge Myers' opinion and write this only because of some language in the dissent. The dissent states that if the trial court's decision was made on factual grounds—and it is plain to me that it was—then it was "manifestly wrong in rejecting defendant's uncontradicted evidence." In my opinion our dissenting colleague is manifestly wrong. He accepts defendant's testimony as true and thinks the trial court should have done so. He forgets that the credibility of a witness is a matter for the trial court and not for this court. The trial court saw appellant and heard her testimony. The trial court was not bound to accept appellant's story which was unusual, to say the least, especially when appellant failed to call as a witness her brother who, according to her testimony, was an eyewitness to the whole transaction.

CAYTON, Judge (dissenting).

In the first place defendant was entitled to judgment on the ground that there was no consideration for the note. The uncontradicted evidence was that neither she nor her brother owed anything to plaintiff. The statement in a deposition, that the note was for "a debt" has no probative value and indeed no actual meaning.

More important, the trial court should have found that the note was given under duress. Defendant was confronted by two armed men, one a Chicago detective (Chamberlin) and the other dressed as a D. C. Metropolitan policeman, both of their guns being visible. Chamberlin said he had papers for the arrest of her brother (present at the time) and both men told her they would take her brother back to Chicago to answer criminal charges (actually there were no such charges) unless she signed a note. In fear of the threat by the armed men, she signed. This was a holdup, not a commercial transaction. And defendant's testimony was uncontradicted, for it was not touched by the conclusionary and hearsay statements in plaintiff's deposition.

This type of situation is one of the ugliest arising in the law of contracts or negotiable instruments. It involves robbing a human being of his volition and forcing him to sign a paper acknowledging a debt, whether a debt existed or not. In this case there was the awesome might of two armed men, obviously able to immediately carry out their threat to arrest defendant's brother and haul him off to face prosecution in another state. Pitting that might and that threat against defendant's natural affection for her brother and her urge to protect him, it is

4. Cherner v. Lawson, D.C.Mun.App., 162 A.2d 492.

5. The conduct of a party in failing to produce an available absent witness may give rise to an inference that the witness, if called, would not have been favorable to such party and is of an impeaching character respecting the party's proof, unless the absence of such witness is satisfactorily explained. See Slenderella Systems,

Inc. v. Greber, D.C.Mun.App., 163 A.2d 462, 464; Evans v. Bell, 49 App.D.C. 238, 240, 263 F. 634, 636; MacConnell v. Wood, 47 App.D.C. 424, 428; Maszczenski v. Myers, 212 Md. 346, 351, 129 A.2d 109, 114; Stocker v. Boston & M. R. R., 84 N.H. 377, 151 A. 457, 70 A.L.R. 1320, 1323.

6. § 11-772(c), D.C.Code, 1961.

small wonder that she capitulated. The law does not say that she is liable on the note because she should have been more stalwart or courageous. In situations like this the law in modern times has consistently protected the weak and the timid, and many courts, including this one, have sternly said that recovery may not be had on a note or other contract obtained under such circumstances. See e. g., O'Toole v. Lamson, 41 App.D.C. 276 (1914); Meisel v. Alexander, D.C.Mun.App., 111 A.2d 873 (1955); Rizzi v. Fanelli, D.C.Mun.App., 63 A.2d 872 (1949). See also Restatement, Contracts, Sections 492–495 (1932).

The trial court gave no reasons for its decision and made no findings of fact or conclusions of law. If the decision was made on factual grounds it was manifestly wrong in rejecting defendant's uncontradicted evidence. If it was based on legal grounds it is completely unsupportable. By any standard it is a wholly unjust and erroneous decision.