**Catherine Marshall PRICE and George P. Marshall, Jr., Children of the Adult Ward, George P. Marshall, Appellants,**

v.

**Edward Bennett WILLIAMS, Milton W. King and John J. Carmody, Appellees.**

No. 20655.

United States Court of Appeals District of Columbia Circuit.

Argued May 16, 1967.

Decided Jan. 3, 1968.

Petition for Rehearing En Banc Denied Feb. 21, 1968.

* Cf. Pharmaceutical Mfrs. Ass'n v. Gardner, 127 U.S.App.D.C. 103, 381 F.2d 271 (1967) (McGowan, J.).

Mr. Philip A. Ryan, Washington, D. C., for appellants. Mr. Francis X. McLaughlin, Washington, D. C., was on the brief for appellants. Mr. John F. Creed, Washington, D. C., also entered an appearance for appellants.

Messrs. Bernard I. Nordlinger, and Paul R. Connolly, Washington, D. C., with whom Messrs. Robert B. Frank and David N. Webster, Washington, D. C., were on the brief, for appellees Williams and King.

Mr. John J. Carmody, Washington, D. C., appellee pro se.

Before EDGERTON, Senior Circuit Judge, and DANAHER and McGOWAN, Circuit Judges.

EDGERTON, Senior Circuit Judge:

This appeal is from a District Court order of October 13, 1966 in a conser-

vatorship proceeding. George Preston Marshall is the majority shareholder of Pro-Football, Inc. (the Washington Redskins). Milton W. King and Edward Bennett Williams, two of the four minority shareholders, are old friends and business associates of Marshall, as was another minority shareholder, the late C. Leo DeOrsey. These three were appointed temporary conservators of Marshall's estate under D.C.CODE § 21–1505 (1967 ed.). He consented to the conservatorship because physical disabilities prevented him from handling his complex affairs. He asked that the three be appointed. They were uniquely qualified to run the Redskins. The court also appointed John J. Carmody guardian *ad litem* to represent Marshall's interests.

Appellants are Marshall's adult children. On August 13, 1964, with appellants' consent, the temporary conservators were appointed permanent conservators of the ward's property and person under D.C.CODE § 12–1501 (1967 ed.). The two surviving conservators are appellees here. When the court made this appointment, it considered a lengthy report of the guardian *ad litem*, who is also an appellee.

Appellants claim the court erred (1) in permitting the services of the guardian *ad litem* to continue after permanent conservators were appointed; (2) in denying appellants' motion to remove appellee conservators for cause; and (3) in granting appellees' motion that appellants be ordered to transfer to appellees an alleged testamentary document entrusted to appellants by the ward after the conservators had been appointed.

I

■ Appellants contend that a guardian *ad litem* may act only when no one else can sue or be sued on behalf of the ward. But D.C.CODE § 21–1502, which in paragraph (a) provides for appoint-

ment of a conservator, provides in paragraph (b)[1] that "the court may appoint a disinterested person to act as guardian ad litem in a proceeding under this section" and that the conservator "shall have the charge and management of the property * * * subject to the direction of the court." A "proceeding under this section" does not end when a conservator is appointed, and we see no reason why a guardian *ad litem* may not continue to function. See Mazza v. Pechacek, 98 U.S.App.D.C. 175, 233 F.2d 666 (1956).

II

■ Appellants contend that the court violated their constitutional rights and abused its discretion because it did not allow them a full hearing, including opportunity for discovery, on their charges of conflict of interest and wrongdoing. Since a conservatorship is "subject to the direction of the court" which created it, that court has broad discretion and we should not reverse its decision unless a clear abuse of discretion is shown. The appointing court should be willing to receive complaints and reports from any source concerning alleged misconduct or conflict of interest of its fiduciaries. Cf. Coleman v. Schwartz, 50 App.D.C. 111, 268 F. 701 (1920). It should consider such complaints sufficiently to determine whether a formal inquiry appears to be necessary, but it need not permit a stranger to the conservatorship to act for the ward. It may instead permit a guardian *ad litem* to act.[2] If the ward's relatives or creditors could always institute proceedings to remove a conservator and use discovery to prepare for a formal hearing on the merits, the efficiency of the conservator's administration of the ward's estate might be greatly reduced and its expense greatly increased. If the District Court's decision that appellants' contentions did not merit a formal hearing was not arbitrary or capricious, we should affirm.

1. Based on D.C.CODE § 21–501 (1961 ed.).

2. Cf. Ex parte Rasin, 116 A. 847 (Md. 1922); In re Jones' Will, 59 Wis. 110, 17 N.W. 687 (1883).

The appellants have not presented, either in the District Court or in this court, any examples of wrongdoing by the conservators. In the District Court they alleged that the conservators failed to report to the court offers to buy the Redskins, failed to disclose these offers and other material facts to appellant Marshall, and voted themselves excessive salaries. But since the appellants admitted that they lacked evidence to support these charges, the court properly rejected them. It properly found, also, that charges of curtailed dividend payments and excessive legal fees should have been taken up with the auditor of the conservatorship accounts.

Appellants say there is an inherent conflict between the interests of the ward and of the conservators because of (1) a provision in the by-laws of Pro-Football, Inc., (2) a voting trust agreement, and (3) a contingent liability of De-Orsey's estate on a note held by the ward. Since appellants could have presented (2) and (3) to the District Court and failed to do so, we cannot consider them in deciding whether the court abused its discretion.

Article VI § 6 of the by-laws provides that if a shareholder wishes to sell his stock and receives a bona fide offer, the other shareholders have the first right to purchase the stock at the same price. Appellants say the conservators would reject an offer to buy the ward's stock, however advantageous it might be to the ward, because if the offer was not rejected a fourth shareholder who now holds 25% of the shares might buy the stock and get control of the corporation.

■■ Fiduciaries must conform to a high standard of conduct, and a fiduciary whose interests conflict with those of his beneficiary should be removed. But in the absence of evidence that the ward wishes to sell his stock or that there is a bona fide offer to buy it, the District Court's finding that there is no conflict justifying removal of the conservators is not a clear abuse of discretion.

III

Appellants contend that, for several reasons, the District Court erred in ordering the testamentary document turned over to the conservators.

(1) On the basis of Jones v. Dunlap, 73 App.D.C. 59, 115 F.2d 689 (1940), they contend that the District Court lacks jurisdiction to order turnover of a will in a conservatorship proceeding when there are conflicting claims as to the right to possess the document.

■■ In a conservatorship proceeding the District Court "has the same powers with respect to the property of a person for whom a conservator has been appointed as it has with respect to the property of infants under guardianships." D.C.Code § 21–1504 (1967 ed.). In exercising these powers, the court is known as the Probate Court. D.C.Code § 11–522 (1967 ed.). When Jones v. Dunlap was decided, however, the District Court, sitting as Probate Court in statutory "special terms", did not have jurisdiction to decide conflicting claims of right to possession of personalty. The Code then provided that the Probate Court "shall not, under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever not expressly given by this Code * * *" D.C.Code § 18–132 (1929 ed.). This language was deleted from the 1967 edition of the Code "as obsolete, or, in any event, unnecessary. * * * There are no longer statutory special terms of the District Court designated as probate court, equity court, etc., and there is no more reason to enact such a provision as this, with respect to the District Court in the exercise of its probate jurisdiction and powers * * * than there would be to enact similar provisions with respect to its other jurisdiction." Revision Notes, D.C.Code § 16–3107. Furthermore, the 1966 amendment to Rule 81 of the Federal Rules of Civil Procedure, by deleting the reference to probate proceedings, makes them subject to the Federal Rules. Rule 81 formerly said, "The Federal Rules do not

apply to probate \* \* \* proceedings." F.R.CIV.P. 81(a) (1965 ed.). Rule 1, F.R.CIV.P., provides that the rules "are to be construed to secure the just, speedy and inexpensive determination of every action." Thus there is today no restriction upon the District Court, sitting in probate, which limits its power to adjudicate the right to possession of personalty. Furthermore, the Federal Rules encourage a court with jurisdiction over the parties to settle all related legal grievances in one proceeding.

■ (2) Appellants say the turnover order is a mandatory injunction and invalid for failure to comply with the requirement of Rule 65(d), F.R.CIV.P., that "Every order granting an injunction \* \* \* shall set forth the reasons for its issuance. \* \* \*" Though this requirement is mandatory,[3] the reasons need not be stated in detail.[4] Conservators have a statutory right to possession of the personal property of the ward, and if the testamentary document is his property, the simple recitation of that fact in the turnover order is sufficient.

■ (3) Appellants claim that a will has no legal significance before the testator's death, is therefore not part of the ward's estate in his lifetime, and is not covered by the provision of the D.C. CODE § 21–141 (1967 ed.) that "\* \* \* a guardian is entitled to an order of the court directing the real and personal estate of the ward to be delivered into his possession. \* \* \*" Delivery of a ward's will to a guardian has sometimes been refused on the ground that it was not part of the ward's estate,[5] but in these cases the will had been executed and turned over to another while the ward was competent. We think the testamentary document in this case, which the ward turned over to the appellants during the conservatorship, should be considered his property and subject to § 21–141. We agree with the District Court that the appellants will not be prejudiced by the change in its possession.

Affirmed.

---

3. International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed. 2d 236 (1967); Mayflower Indus. v. Thor Corp., 182 F.2d 800 (3d Cir. 1950).

4. *Cf.* Pennsylvania R.R. Co. v. Transport Workers Union of America, 278 F.2d 693 (3d Cir. 1960) ("the danger of irreparable injury is immediate" was a sufficient statement of reason).

5. Mastick v. Superior Court, 94 Cal. 347, 29 P. 869 (1892); Pond v. Faust, 90 Wash. 117, 155 P. 776 (1916).