**Ellen D. MITCHELL, Appellant,**

v.

**Cynthia D. ENSOR, Appellee.**

**Ellen D. MITCHELL, Appellant,**

v.

**Cynthia D. ENSOR et al., Appellees.**

**Nos. 20916, 20993.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 19, 1968.

Decided Feb. 4, 1969.

Mary M. Burnett, Washington, D. C., for appellant.

William H. Bradford, Washington, D. C., with whom John G. DeGooyer, Washington, D. C., was on the brief, for appellee, Ensor.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER* and TAMM, Circuit Judges.

TAMM, Circuit Judge.

This case presents for our determination the permissibility and legality of certain awards of compensation to the guardian ad litem, temporary conservator and permanent conservator of the person and estate of the appellant. It arises on appeal from orders of the district court granting compensation to those officers and ratifying the report of the auditor.

The facts of this case are particularly pertinent to its disposition. Appellant, Mrs. Ellen Donoho Mitchell, is a resident of Maryland. On May 7, 1965, she was arrested for disorderly conduct while visiting the District of Columbia and confined at D. C. General Hospital. At the time of her arrest and incarceration she had in her possession certain clothing and personal effects, $90.00 in cash, a savings account passbook indicating a balance of approximately $1,200 with the Maryland National Bank, and a dividend check for $745 payable to her order from Strayer's Business College, Inc., a Maryland corporation. Approximately one month after her arrest, Mrs. Mitchell was ordered committed to the St. Elizabeths Hospital as being "of unsound mind or * * * mentally incompetent so as to be unable to understand the proceedings against [her] or

properly to assist in [her] own defense." 24 D.C.Code § 301(a) (1967).

In December, 1965, appellee Ensor, as sister of the appellant, petitioned the trial court for the appointment of a temporary and permanent conservator pursuant to 21 D.C.Code § 1501 (1967).[1] The petition alleged, *inter alia*, that Mrs. Mitchell had, at the time of her commitment to the Hospital, an annual income of $5,000 and that she owned personal property in the amount of $51,945, consisting of the items in her possession at arrest plus one hundred twenty-four and one-half shares of stock in Strayer's Business College, Inc. (represented by petitioner to be a District of Columbia corporation) valued in excess of $50,000. Appellee Ensor further alleged that the appellant's property interests needed immediate representation in connection with negotiations for the sale of the corporation. On the basis of this petition, District Judge Hart scheduled a hearing with regard to the appointment of a permanent conservator and appointed John L. Laskey as guardian ad litem of the appellant and appellee, R. K. Kennon Jones, her temporary conservator.

The guardian ad litem reported to the court that the actual value of the appellant's stock was in the neighborhood of a quarter of a million dollars and that his investigations disclosed the desirability of appointing a permanent conservator. On January 26, 1966, the court authorized the guardian to employ, at the expense of the estate, an independent psychiatrist to examine Mrs. Mitchell and to report his findings to the court. The temporary conservator's sixty-day report, filed February 23, 1966, showed an estate consisting of the property and stock interest already mentioned plus a

---

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

1. 21 D.C.Code § 1501 provides in pertinent part:
   When an adult residing in or having property in the District of Columbia is unable, by reason of advanced age, mental weakness not amounting to unsoundness

of mind, mental illness, as the latter term is defined by section 21–501, or physical incapacity, properly to care for his property, the United States District Court for the District of Columbia may, upon his petition or the sworn petition of one or more of his relatives or any other person * * * appoint a fit person to be conservator of his property.

second dividend check of $1,867 and a second bank account of $80.

The psychiatrist filed a written report and testified at a hearing on March 1, 1966, that Mrs. Mitchell was suffering from "schizophrenic reaction, chronic undifferentiated type" (Tr. Romig, p. 8) and that in his opinion she was unable properly to care for her property. At another hearing on March 4, 1966, Hugh J. McGee, serving as counsel for Mrs. Mitchell, raised some questions going to the court's jurisdiction. Judge Gasch postponed decision on appointing a permanent conservator and by letter asked the guardian ad litem to report on the jurisdictional questions. The guardian ad litem subsequently reported that, in his opinion, the court did have jurisdiction to appoint a conservator.

On March 17, 1966, Judge Gasch ordered that appellee Ballard be appointed permanent conservator, and, on March 21, the court awarded compensation to the guardian ad litem in the amount of $2,382 ($1,500 of which was ultimately paid) and subsequently to the temporary conservator in the amount of $3,321. On May 2, 1966, the Court of General Sessions dismissed the disorderly conduct charge against Mrs. Mitchell, who then was released from St. Elizabeths and returned to her home in Baltimore.

On Mrs. Mitchell's motion for summary reversal of the orders appointing temporary and permanent conservators, this court, on June 30, remanded the case to the district court for further consideration in accordance with an accompanying *per curiam* opinion. This court held (1) that Mrs. Mitchell was not "residing in" the District of Columbia as that term is used in 21 D.C.Code § 1501, and (2) that Strayer's is a Maryland corporation and that "the stock interest of a Maryland corporation, the certificates of which are not present in the District, is not a sufficient basis upon which the District Court might appoint a conservator." Consequently, the case was remanded for consideration of whether a conservator should have been appointed on the basis of the remaining property in the District.

After a hearing on remand, Judge Gasch issued a memorandum dated September 1, 1966, in which he summarized the considerations that led to the appointment of a conservator. Recognizing that in the light of subsequent developments the stock interest in Strayer's Business College could not form the basis for the appointment, he nonetheless concluded that, "having appointed * * * a Guardian *Ad Litem* a temporary conservator and a permanent conservator for the protection of the property of the patient, and since these officers of the court have performed their duties and discharged their responsibilities in such a way that the patient has derived benefit from their actions, the Court feels that they should be compensated for their services rendered." Accordingly, he invited the conservators to submit statements for their professional services. Though the memorandum is not explicit, Judge Gasch apparently concluded that the conservator was properly appointed on the basis of the remaining property in the District. On December 28, 1966, the court ordered that the funds remaining in the custody of the conservator be divided equally between the temporary and permanent conservators (notwithstanding the earlier award to the temporary conservator, which was never paid).

The report of the auditor, filed February 16, 1967, and ratified by order on March 29, 1967, included the following salient information. Assets actually taken over by the permanent conservator amounted to $3,892, consisting of two dividend checks and two bank accounts. Disbursements totaled $2,954 including $480 paid to the psychiatrist who testified at the March 1 hearing, $912 in payment of Mrs. Mitchell's state income taxes, and $1,500 paid to the guardian ad litem as part of his authorized fee of $2,381. After deducting his $50 fee, the auditor recommended that the balance of the estate be distributed equally to appellees Jones and Ballard.

This court granted Mrs. Mitchell leave to appeal in forma pauperis from the orders granting compensation to the conservators and ratifying the report of the auditor. Appellees Jones and Ballard filed no briefs and made no appearance. Counsel for appellee Ensor stated on oral argument that his sole interest was to protect his client from any assessment of costs or attorney's fees as a result of the conservatorship proceedings. The essence of Mrs. Mitchell's claim was that a conservator should never have been appointed and therefore she should be made whole, or alternatively, that the compensation awards were excessive in light of the size of the estate.

In attempting to accord substantial justice under the law to all parties on this appeal, we must deviate somewhat from the briefs and direct our gaze at the full factual and legal posture of this case in light of the relevant authority and the fundamental concepts of equity.

The issues are quite basic. They resolve themselves into two questions:

1. In light of our former remand in this case (striking from consideration of the district judge the property of the ward relating to her ¼ interest in Strayer's Business College, Inc.) did Judge Gasch properly appoint a conservator of the "property" left after said striking?

2. Was the trial judge on solid legal and equitable ground in awarding, as fees, the total amount of property in the conservator's possession?

■ Although the trial judge indicated compliance with our direction *not* to base any appointment upon consideration of the Strayer's stock, the language of his memorandum of reconsideration in light of remand seems to indicate that this property was relied upon at least to the extent of being a well from which to draw compensation for the appointees. We point out, however, that

the statute specifies no minimum amount of property necessary for appointment of a conservator. It is reasonable to assume, therefore, that where there is *any* property in the District of Columbia, the appointment of a conservator is left up to the discretion of the trial judge. Here Judge Gasch viewed the order of this court upon remand and concluded that the appointment of a permanent conservator was proper. Even to the exclusion of the Strayer's stock there was "property" in the District and we see no apparent abuse of discretion. It may be that Judge Gasch would have denied the petition in the first instance had he known then that Mrs. Mitchell had only $850 in the District.[2] Here, however, where the initial appointments were based on colorable jurisdiction, it was perfectly proper for Judge Gasch to consider the services already performed at the time of the hearing on remand and to conclude, in retrospect, that the conservator was properly appointed. The alternative would have been to void all the proceedings *ab initio*. The resulting inequities to the guardian ad litem and the conservators are apparent.

We proceed now to the question of the awarding of fees. The District Court awarded the guardian ad litem $2,382 for seventy hours of service. Mr. Laskey was paid $1,500 on account and, to date, has received no more. The temporary and permanent conservators were compensated out of the balance of the estate in the hands of the permanent conservator. This amount came to the figure of $445 for each. It is our duty to determine if these fees are excessive taking into account the statutes, case law and reason.

The statute is silent on the question of compensation of guardians ad litem and conservators. The only helpful statutory language appears in 21 D.C.Code §§ 1503, 1504. Section 1503, dealing with the powers and duties of a con-

---

2. We arrive at this figure by looking to the property in the District at the time of the initial appointments, less the Strayer's stock interest and less the $1,200 bank account, the situs of which, as a debt, was in Mrs. Mitchell's domicile, Maryland. See Railroad Co. v. Pennsylvania, 82 U.S. (15 Wall.) 300, 320, 21 L.Ed. 179 (1872).

servator, states that he shall have the "same rights and powers with respect to the property of the person as have guardians of the estates of infants." Section 1504, concerning discharge, states that the "court has the same powers with respect to the property of a person for whom a conservator has been appointed as it has with * * * respect to the property of infants under guardianship." Section 143 of Title 21 does provide for compensation for guardians of the property of infants. It reads "[t]he court shall allow a reasonable compensation for services rendered by the guardian not exceeding a commission of five per centum of the amounts collected, if and when disbursed." 21 D.C.Code § 143 (1967). In In re Searle, 118 F.Supp. 273 (D.D.C.1953), the court relied on the predecessors of the above sections, holding that, since the guardianship statute "apparently was the paradigm and the pattern and guide out of which that dealing with conservators sprung, and since the duties of a conservator and a guardian are fundamentally and basically the same, I conclude that the compensation is thereby fixed accordingly." In Searle, the court held that temporary conservators are to be compensated differently. They were to be awarded a reasonable fee in light of their services, the size of the estate, and the compensation previously awarded the guardian ad litem.

■■ Relying on Searle as authority to compensate these appointees, Judge Gasch bolstered his position by reference to an unjust enrichment concept in that the services of the men greatly increased the net worth of the stock of the ward. A marriage of the rationale of Judge Gasch and the policy behind Searle, in

the absence of specific statutory guidance, indicates that the compensation to be awarded guardians ad litem and conservators must be based upon (1) the character of the services rendered, (2) the amount of time spent, (3) the size of the estate administered, and (4) the benefits that accrued to the estate as a result of the services.[3] These criteria are limited only to the extent of reason.[4]

In determining the final disposition of this case on remand, several questions must be answered before compensation may be awarded. Although the guardian ad litem and both conservators submitted detailed statements concerning the services rendered and time spent, serious questions remain as to the size of the estate and the benefits that accrued.

In addition to the $850 in the District originally, the conservators took possession of the two savings accounts and the second dividend check and were at least dealing in Mrs. Mitchell's behalf with regard to her stock interest. The question is whether conservators appointed in the District of Columbia have the authority and power to take control of the ward's property located elsewhere. The answer depends upon the law of both the District of Columbia and the jurisdiction in which the property is located. Upon that answer hinges the "size of the estate" for purposes of compensation in this case.

First, although the D.C.Code does not make clear whether the conservator has authority to reach into other jurisdictions, the statutory intent apparently is that, once the jurisdictional basis has been established, the conservator may take control of as much of the ward's estate as he is able. Nowhere does the statute explicitly limit the conservator to

3. Cf. Bakery & Confectionery Workers Int'l Union of America v. Ratner, 118 U.S.App.D.C. 269, 335 F.2d 691 (1964); Ratner v. Bakery & Confectionery Workers Int'l Union of America, 122 U.S.App.D.C. 372, 354 F.2d 504 (1965); Schmidt v. McCarthy, 125 U.S.App.D.C. 131. 369 F.2d 176 (1966); Freeman v. Ryan, 133 U.S.App.D.C. 1, 408 F.2d 1204 (Oct. 16, 1968). These cases, taken together, establish similar standards for compensation of attorneys whose efforts help produce a fund for the benefit of a class.

4. Although we decline to adopt a frozen figure of 5%, we see no reason to preclude its use as a flexible rule-of-thumb for fixing reasonable compensation in ordinary cases.

management of the property that forms the basis of his appointment. Indeed, he may be appointed solely on the basis of the ward's *residency*, irrespective of any property actually located in the District. 21 D.C.Code § 1501, *supra*. Further, 21 D.C.Code § 1503 implies that the conservator may extend his reach beyond the borders of the District:

> [The conservator] shall have control of the estate, real and personal, of the person for whom he has been appointed conservator, with power to collect *all* debts due the person, and upon authority of the court to adjust and settle *all* accounts owing by him * * *. (Emphasis added.)

The only judicial statement on the matter lends further support to this conclusion. In Cooper v. Burton, 75 U.S.App. D.C. 298, 127 F.2d 741 (1942), the court implied, in dicta, that the conservator may take control of property outside the District provided there is personal jurisdiction over the incompetent.

■■ However, authority under the D.C.Code cannot itself give the conservator the power to assert control over property in other jurisdictions. As stated by the Supreme Court, "a guardian appointed by the courts of one State has no authority over the ward's person or property in another State, except so far as allowed by the comity of that State * * *." Lamar v. Micou, 112 U.S. 452, 470, 5 S.Ct. 221, 28 L.Ed. 751 (1884); *accord,* Hoyt v. Sprague, 103 U.S. 613, 631, 26 L.Ed. 585 (1880). Most states do accord such comity, especially where the state of appointment is the ward's domicile. *See* Lamar v. Micou, *supra* at 470. The law of Maryland does not make clear whether a foreign conservator appointed for a Maryland domiciliary will be accorded the necessary comity, though it does quite clearly extend such to a foreign conservator appointed for one who is *not* a domiciliary of Maryland. See Art. 16, § 148, Md.Ann.Code and Md. Rules of Proc. rule 179. In addition, a foreign conservator has general authority, *without* complying with local

law, to receive money or property located in another state where it is paid or delivered *voluntarily*. Volpe v. Emigrant Indus. Sav. Bank, 277 App.Div. 543, 101 N.Y.S.2d 82 (1950), aff'd, 303 N.Y. 704, 103 N.E.2d 61 (1951).

■ Applying these principles to the present case, the record suggests that the bank accounts and second dividend check were delivered to the conservator voluntarily. If this is so, they are legitimately part of the estate. The record shows that the conservators had dealings in Mrs. Mitchell's behalf with regard to her stock interest, but it is not clear to what extent they actually assumed, or had the power to assume, control over the stock. Proper determination of the size of the estate therefore requires that the record be supplemented.

■ The record manifests uncertainty concerning whether the services of the guardian and the conservators actually inured to the benefit of Mrs. Mitchell. There is some suggestion that the value of her stock interest was enhanced by some $150,000, though this is sharply disputed by Mrs. Mitchell's attorneys. From all the record shows, the stock may well have increased in value regardless of the efforts of the conservators. Since the question of benefits is central to a determination of compensation, the record needs to be supplemented by specific findings of fact on this point.

We have carefully considered the other points raised by appellant and find them lacking in merit. Accordingly, we reverse the decision of the trial court in each of these cases and remand to that court for a determination as to (1) the benefits that accrued to the estate of the ward as a result of the services of the guardian ad litem and the conservators, and (2) the extent to which the conservators assumed control of the stock interest. Upon such findings the court is directed to proceed in accordance with this opinion toward final disposition of this case.

Reversed and remanded.