**Sidney ROSENDORF et al., Appellants,**

v.

**James C. TOOMEY, Conservator, Appellee.**

**Nos. 7765 and 7856.**

District of Columbia Court of Appeals.

Argued Feb. 20, 1974.

Decided Dec. 17, 1975.

---

**696**

Paul H. Mannes, Rockville, Md., argued for appellants.

Stanley Klavan and Kaye T. Brooks, Rockville, Md., were on the briefs for appellants.

Benjamin F. Rossner, Washington, D.C., for appellee.

Before KERN and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

HARRIS, Associate Judge:

These consolidated appeals present challenges to the trial court's rulings on objections which were filed by appellants to various accountings of the conservator and the substitute conservator of the Estate of William Rosendorf and to the reports of the Auditor-Master on those accountings.

Appellants are the adult children of the ward, William Rosendorf, by his first marriage. They sought (1) to have all accounts filed by both the conservator and the substitute conservator of their father's estate re-audited, and (2) to require an accounting by the substitute conservator and by Mollie Rosendorf, the second wife and widow of William Rosendorf, of all disbursements made by the substitute conservator to Mollie for the benefit of the deceased ward. The trial court ruled: (1) that appellants' objections to the accountings filed by the original conservator and the related Auditor-Master's reports were untimely; (2) that the substitute conservator's final report (as supplemented and revised) and the report of the Auditor-Master thereon should be ratified and affirmed; and (3) that the Auditor-Master's recommendations on the commissions to be paid to the substitute conservator should be

sustained. Later, another judge of the trial court granted the substitute conservator leave to retain counsel on this appeal at the expense of Mr. Rosendorf's estate. We affirm.

### I

William Rosendorf's property first became subject to the jurisdiction of a court through a conservatorship on October 26, 1965. The original conservator was the National Savings and Trust Company (NS & T). Mr. Rosendorf's first wife was deceased. He was separated from his second wife, Mollie, and litigation between them was pending. On Novmber 30, 1965, NS & T filed a petition requesting leave of the United States District Court for the District of Columbia to pay the ward's living expenses.[1] The court approved the request, authorizing NS & T "to pay or to apply for the benefit of William Rosendorf up to $500 per week for his current living expenses . . . and also to pay his wife . . . $250 every other week for her current living expenses."

Shortly thereafter, the Rosendorfs reconciled and resumed living together. Following a request by NS & T in January 1966, the respective living expense allowances were increased by District Court order to $700 per week for the benefit of William and $250 per week for Mollie.

This arrangement continued until June 1967, when Mrs. Rosendorf petitioned the court to remove NS & T as conservator and substitute James C. Toomey, an attorney. The court granted the request; Mr. Toomey was appointed as substitute conservator on July 20, 1967.[2] Upon its withdrawal as conservator, NS & T filed its second and final account on August 28, 1967. The Auditor-Master's report on that account was filed October 4, 1968, and NS & T was discharged by District Court order dated June 24, 1970. The order specifically noted that the applicable time period for exceptions had elapsed with none having been submitted.[3]

On October 13, 1967, the substitute conservator petitioned the court for leave to disburse $800 weekly for the benefit of William for current living expenses. The court modified certain projected expense figures downward, and authorized Mr. Toomey "to disburse to, or for the benefit of, William Rosendorf . . . $575 per week, and to disburse to his wife, Mollie Rosendorf, the sum of $250 per week. . . . "

In November 1967, Mr. Rosendorf suffered a stroke. He was hospitalized until January 1968, when he returned home. The stroke left Mr. Rosendorf physically incapacitated and incapable of attending to his basic needs. From the time of the strike until Mr. Rosendorf's death over two years later, the substitute conservator made payments of $575 per week directly to Mrs. Rosendorf for the benefit of the ward (in addition to the $250 per week for Mollie herself).

Mr. Toomey filed his first account in the District Court on August 20, 1968. A principal item of the account was the payment of that $575 per week for the period from September 21, 1967, to July 17, 1968; the total was $24,725.00. The Auditor-Master's report on that account was filed November 8, 1968. No objections were filed to either of those documents, although appellants were furnished copies of them.

Mr. Rosendorf died on April 30, 1969. On August 14, 1969, Mr. Toomey filed his

---

1. Jurisdiction over conservatorships was in the District Court until August 1, 1972, on which date it was transferred to the Superior Court. See D.C.Code 1973, §§ 11–501 and 11–921(a)(5)(A)(vi).

2. Mr. Toomey became the substitute conservator of the estate of Mr. Rosendorf; at no time was he (or the predecessor conservator) appointed conservator of the person of the ward.

3. Appellants do not contend that they did not receive proper notice of the filing of the account.

second and final accounting, covering the period from July 21, 1968, to July 20, 1969. A supplement thereto was filed on November 8, 1972.[4] The first time appellants objected to any of the accountings or reports of the Auditor-Master was on November 10, 1972, when they challenged the second and final account of Mr. Toomey, incorporating therein retroactive objections to all accounts previously filed by both NS & T and Mr. Toomey.

Mr. Toomey's final account was audited, and the Auditor-Master's report thereon was filed on April 24, 1973. Appellants objected to the findings, again requested a re-opening of all previous accounts, and added an objection to the recommended commissions to be paid to the substitute conservator.

A hearing was held, and the trial court took the matter under advisement. In a written opinion, the court ruled against appellants on all counts. It found that appellants' objections to the two accounts of NS & T, the Auditor-Master's reports thereon, the first account of Mr. Toomey, and its concomitant Auditor-Master's report were all untimely. It ratified the Auditor-Master's report on the final account, sustained the recommended commissions, and discharged Mr. Toomey as substitute conservator. One appeal (No. 7765) was taken from that order; the second (No. 7856) was taken from the subsequent order of a different judge which allowed Mr. Toomey leave to engage counsel for this appeal at the expense of the estate.

## II

The trial court was correct in its ruling that appellants' challenges to the two ac-

counts of NS & T, the first account of Mr. Toomey, and the related Auditor-Master's reports were untimely. Appellants contend that their legal interests as to the matters contained in those accountings did not exist until they had successfully challenged the last two purported wills of Mr. Rosendorf and established an earlier testamentary document as the valid will under which their inheritance rights were secured. The trial court rejected that argument, stating:

As children of the ward, served individually with copies of the Auditor's proposed report on the accounts of the conservator, they were entitled to object at that time and did not have to await the ward's death and subsequent determination of beneficial interest in his estate.

■ ■ In circumstances such as these, there is no requirement that interests be sufficiently mature or vested to be legally and formally cognizable as adverse. Case law in this jurisdiction encourages the submission to the court (or the Auditor-Master) of "complaints and reports from any source concerning alleged misconduct or conflict of interest of its fiduciaries." *Price v. Williams*, 129 U.S.App.D.C. 239, 241, 393 F.2d 348, 350 (1968). Since appellants readily could have filed objections to the series of accounts and reports spanning the period from December 28, 1966 (the date of NS & T's first account) to June 24, 1970 (the date of the discharge of NS & T as conservator), their failure to do so precluded them from raising objections concerning those reports for the first time on November 10, 1972.[5]

## III

Appellants' objections to Mr. Toomey's second and final account were filed two

---

4. The lengthy period of time between the filing of the second account and the supplement thereto was attributable to appellants' successful challenge—based upon allegations of undue influence by Mollie—to the last two testamentary instruments executed by their father.

5. Superior Court Civil Rule 53(e)(2) states in pertinent part: "Within 10 days after be-

ing served with notice of the filing of the report any party may serve written objections thereto upon the other parties." Rule 53(e) (2) of the Federal Rules of Civil Procedure, which apply in the United States District Court where the first three accounts and reports originally were filed, contains an identical 10-day time limit.

days after the account was filed. They thus were timely, and we now consider the correctness of the trial court's ruling ratifying and affirming the account and the Auditor-Master's report.

■ The applicable standard of review is restrictive. The trial court is required to accept the Auditor-Master's findings of fact unless they are clearly erroneous. Super.Ct.Civ.R. 53(e)(2); *see David v. Bryant,* 117 U.S.App.D.C. 266, 328 F.2d 567 (1964). We are guided by the same standard. *David v. Bryant, supra; see Dyker Building Co. v. United States,* 86 U.S.App.D.C. 297, 299, 182 F.2d 85, 87 (1950). In addition, the decision whether to hold an evidentiary hearing on objectors' claims is within the discretion of the trial court, and is not to be disturbed absent a showing of "clear abuse". *Price v. Williams, supra* at 241, 393 F.2d at 350.

The principal issue raised by appellants' objections was the accountability of the substitute conservator for disbursements made for family living expenses pursuant to the District Court's order. Certain of those disbursements, *i. e.,* those made after the ward's stroke in the amount of $575 per week, were made by check payable to Mrs. Rosendorf. Appellants argue that the substitute conservator was obligated to assure himself that all of the sums so paid pursuant to the court's order were actually applied for the benefit of the ward, and were not used for the benefit of Mrs. Rosendorf as opposed to the ward himself.

Appellants proffered, both in their written objections and at the hearing on the objections, that the full amount of the weekly payments given to Mrs. Rosendorf by the substitute conservator for the maintenance of the Rosendorf household could not have been needed or expended by her for such purposes, since Mr. Rosendorf then was a bedridden man whose medical needs were paid for by the conservator through separate expenditures.[6] Appellants also contended that the checks for weekly living expenses which were delivered to Mrs. Rosendorf were endorsed by her and either cashed or deposited in her personal bank account.

The Auditor-Master concluded:

> Concerning the disbursements contained in the final accounts of the Substitute Conservator, James C. Toomey, the Auditor-Master has reviewed each of these disbursements and the objections thereto together with the Points and Authorities in support of the objections and finds that all of the said disbursements made by the Substitute Conservator were proper disbursements to or for the benefit of the former Ward, William Rosendorf, and that same were authorized and made pursuant to appropriate Court order and in particular, Court order of October 20, 1967.

Did the Auditor-Master so misconceive the substitute conservator's duty under the court's order as to render clearly erroneous its findings that the substitute conservator acted properly? We conclude that he did not.

■ The gravamen of the appellants' argument seems to be that because the Oc-

6. For example, appellants note that certain of the expenses which provided the basis for the figure of $575 per week, such as transportation expense, and recreation, travel, restaurant and entertainment expenses, could not have been actually expended for Mr. Rosendorf's benefit since it was physically impossible for him to utilize them after November 1967. In response, appellee notes that some expenses increased, due, for example, to more meals being eaten in and to the entertainment of those who came to visit Mr. Rosendorf.

In addition, appellants claim that the $125 and $70 amounts allotted weekly for a chauffeur and a maid, respectively, actually were paid outside of and in addition to the $575 per week budget. Appellee responds that those two individuals obviated the need for round-the-clock nurses, thereby saving considerable sums. The record fails to make clear whether the salaries paid to the chauffeur and the maid, as nurses, were supplemental to or in lieu of their salaries as chauffeur and maid.

tober 20, 1967, court order presumably was premised on a projected expense budget, any change in the ward's condition such as that occasioned by the stroke should have caused the conservator to submit a revised budget to the court and should have prompted him to monitor more carefully the day-to-day expenditures in the Rosendorf household. We do not agree. The fact that the court order for disbursement of funds might have been based on a projected budget did not require the substitute conservator to see to it that funds were expended in exact—or even approximate —proportion to the amounts set forth in the estimated budget. A large degree of flexibility, autonomy, and discretion is necessary in running a household with changing needs, and we are unwilling to say that a wife caring for the daily needs of a relatively large household may not deviate from a projected cost schedule or that a conservator must see to it that she does not so deviate.

■ Mr. Toomey perceived one of his duties to be assuring that his ward was "living in the condition to which he was accustomed to living" and was well cared for. To that end, he frequently visited his ward. Appellants do not suggest that Mrs. Rosendorf did not see that their father was well cared for, nor do they contend that anyone but Mrs. Rosendorf had full and continuing responsibility for running the household. When Mr. Toomey filed his first account, Mr. Rosendorf had been bedridden from his stroke for over seven months, but appellants lodged no objections to the continued disbursement of the $575 weekly allowance. Rather, appellants' objection for that period appears to have been that too much of the Rosendorf estate was being expended on Mr. Rosendorf; perhaps he readily could have lived more

frugally. Appellee validly replies that it was his obligation to conserve Mr. Rosendorf's estate for Mr. Rosendorf's use, rather than for future heirs.

■ Similarly, the fact that Mrs. Rosendorf apparently deposited the weekly living expense funds in her own checking account did not constitute cause for concern or action on the part of the conservator.[7] Mrs. Rosendorf was the sole head of the household and was responsible for the payment of bills, salaries, etc. The trial court observed:

The Court is not insensitive to the basic thrust of the objectors' position, i. e., that the ward may not have received the benefit of checks issued under the orders herein referred to. However, assuming, *arguendo,* that this were true, the substitute conservator nonetheless has no responsibility for making that determination, after the fact, when he was not required by the court as a condition precedent, to follow the allowances into the household of the ward and his wife through an accountability imposed upon them. In this connection, it is worthy of note that the ward's wife would have been under no requirement to retain cash in their home, nor to apply toward household expenditures the identical dollars from proceeds of the substitute conservator's checks.

■ A part of a conservator's statutorily imposed obligations requires him to "apply such part of the annual income and of the principal of the estate as the court authorizes to the support of the person and the maintenance and education of his family and children; . . ." D.C.Code 1973, § 21–1503. Considering all of the circumstances, we are unable to say that the manner in which the substitute conser-

7. Appellants also alleged that when Mrs. Rosendorf cashed or deposited the checks which she received from the conservator, she also paid a visit to a safety deposit box. Varying implications could be drawn from

such a fact, assuming it to be true, but in the overall context of this case, such conduct is not relevant to appellants' efforts to seek indemnification from the conservator.

vator performed his responsibilities to his ward pursuant to court order fell short of satisfying his fiduciary obligations.[8] Therefore, the trial court's order ratifying and affirming the Auditor-Master's report which recommended approval of the substitute conservator's revised second and final account is affirmed.

## IV

As their third assertion of error, appellants claim that the trial court failed to review properly the commissions recommended by the Auditor-Master for the substitute conservator before approving them. We find no merit in this claim.

Chapter 15, of Title 21 of the D.C.Code deals with conservators. Their powers and duties are set forth (in rather abbreviated form) in § 21–1503. That section concludes by stating that a conservator " . . . shall in all other respects perform the same duties and have the same rights and powers with respect to the property of the [ward] as have guardians of the estates of infants." It could be argued with some validity that among the rights of the guardian of a minor is the right to just compensation, and that reference to the compensation permissible for a guardian should be made in the case of a conservator. A guardian's commissions are limited by statute. Section 21–143 of the Code states in part: "The court shall allow a reasonable compensation for services rendered by the guardian not exceeding a commission of five per centum of the amounts collected, if and when disbursed."

The United States Court of Appeals considered a unique factual situation in *Mitchell v. Ensor,* 134 U.S.App.D.C. 24, 412 F.2d 155 (1969). In that case, the assets of the ward which were in the District of Columbia were quite limited (there were substantial assets in Maryland), and the in-jurisdiction assets were ordered by the trial court to be split between a guardian ad litem, a temporary conservator, and a permanent conservator. While the court remanded the case for further findings relating to the extent of the fiduciaries' activities and their compensation, it specifically declined to apply the "frozen figure of 5%" which is set as a compensation limitation for guardians. The court continued, however, and stated that " . . . we see no reason to preclude its [five per cent] use as a flexible rule-of-thumb for fixing reasonable compensation in ordinary cases." *Id.* at 29 n. 4, 412 F.2d at 160 n. 4.

Three of the four factors which the *Mitchell* court considered to be relevant to a determination of the proper compensation for guardians ad litem and conservators were "(1) the character of the services rendered, (2) the amount of time spent [and], (3) the size of the estate administered . . . ."[9] 134 U.S.App.D.C. at 29, 412 F.2d at 160. The Auditor-Master's recommendations on compensation for Mr. Toomey [made pursuant to Super.Ct. Civ.R. 302(a)] indicate that he took proper cognizance of the factors discussed in *Mitchell.* Noted were Mr. Toomey's lengthy service to the Rosendorf conservatorship, the complexities involved in handling the assets of the conservatorship, and

8. We concur in the following additional observation of the trial court:
    Mollie Rosendorf is not subject to control in this proceeding. She was not appointed in any capacity and had no duty to account for her actions in handling the family household funds.
    Mrs. Rosendorf was the defendant in an action for fraudulent conversion brought by the Estate of William Rosendorf, deceased, in the United States District Court for the District of Columbia, Civil Action No. 1193–'72, which

alleged improper disposition by her of the expense funds disbursed to her by the conservator. That suit was dismissed by the District Court, and now is on appeal in the United States Court of Appeals for the District of Columbia Circuit.

9. The fourth factor set forth by the *Mitchell* court, "the benefits that accrued to the estate as a result of the services", appears to have little (if any) materiality in this case.

the extent of the assets collected and disbursed. The Auditor-Master arrived at recommended commissions (made up of different components) at or below the five percent figure.

It was within the trial court's discretion to approve the Auditor-Master's recommendations as long as they were prepared with the requisite criteria in mind and were reasonable. We uphold its decision to do so.

### V

Finally, appellants maintain that the granting of Mr. Toomey's petition to retain counsel or, in the alternative, to anticipate compensation for extraordinary services personally on this appeal, was improper. We disagree, and affirm the trial court's order on this question.

▬▬▬ Superior Court Civil Rule 305(c) requires a fiduciary to seek leave of court for all expenditures involved in the administration of an estate. It is within the court's discretion to authorize such expenditures. It is clear that Mr. Toomey was being sued in his representative capacity for an accounting of expenditures of estate assets, rather than in an individual capacity.[10] A fiduciary acting in his representative capacity may be reimbursed for expenses involved in accounting proceedings, subject only to a limitation of reasonableness in amount and the court's exercise of supervisory discretion, unless he is shown to have committed a breach of trust or to have acted in bad faith or otherwise improperly. *See generally* G. Bogert, Trusts and Trustees § 972 (2d ed. 1962). On these facts, which present no showing of wrongdoing by the substitute conservator, the prospective allowance of attorney's fees in regard to this appeal (subject to future approval by the trial court as to amount) was a reasoned and proper exercise of the trial court's discretion.

*Affirmed.*

10. D.C.Code 1973, § 21–1503 states that a conservator shall have the power "to sue and be sued in his representative capacity".