## OWENS v. DANIEL et al.

### (Circuit Court of Appeals, Fifth Circuit. March 1, 1916.)

### No. 2769.

1. BANKRUPTCY ☞303—SETTING ASIDE TRANSFER—SUFFICIENCY OF EVIDENCE —CONSIDERATION.

In a suit by a trustee in bankruptcy to set aside a conveyance of land from the bankrupt to his wife, evidence *held* insufficient to show that the land was purchased with the wife's money and equitably belonged to her.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ☞303.]

2. BANKRUPTCY ☞303—FRAUDULENT TRANSFER—PRESUMPTIONS AND BURDEN OF PROOF.

Where the wife of a bankrupt, to whom he conveyed land shortly before bankruptcy, claimed that the land was purchased with her money, there was a presumption against her, to be overcome by affirmative proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ☞303.]

3. BANKRUPTCY ☞178—FRAUDULENT TRANSFERS—TRANSACTIONS BETWEEN HUSBAND AND WIFE.

Where a husband, to the knowledge of his wife, held himself out for years as the owner of land claimed by her to have been purchased with her money, and refused to admit that she had any interest therein, returned it for taxation in his own name, and obtained credit on the

strength of his ownership, the property was the husband's for the purpose of paying his debts, and he could not convey it to the wife when insolvent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. ☞178.]

Appeal from the District Court of the United States for the Southern District of Georgia; William T. Newman, Judge.

Suit by George W. Owens, trustee of Henry R. Daniel, bankrupt, against J. Addie Daniel and another. Decree for defendants, and complainant appeals. Reversed and remanded, with directions.

Frederick T. Saussy and T. M. Cunningham, Jr., both of Savannah, Ga., for appellant.

Jas. K. Hines, of Atlanta, Ga., for appellees.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

FOSTER, District Judge. On March 31, 1913, certain creditors filed a petition against Henry R. Daniel to have him adjudicated a bankrupt, alleging that on December 19, 1912, while insolvent he had conveyed certain real estate to his wife, J. Addie Daniel, with intent to hinder and defraud his creditors. The case was tried to a jury and resulted in a verdict against the defendant. An adjudication followed. In due course G. W. Owens was elected trustee, and thereafter filed his bill to set aside the said conveyance. The bill alleges that the sale was fictitious, and the consideration of $6,900 named in the deed was never paid by the grantee. Mrs. Daniel answered, and admitted the above allegations, but set up that the property in question had been paid for originally with her money, and the transfer assailed had been made to give her the legal title.

The bill was also brought against Mrs. Hattie D. Fountain, a daughter of Mr. and Mrs. Daniel, to set aside a security deed made November 3, 1906, securing a loan of $2,500 from her to her father. The bill alleges the debt has been paid in full, or that at most a very small balance remains due. Mrs. Fountain filed a separate answer, claiming a balance of $2,360.30 to be due on the original loan, and alleging an additional loan of $150 was by agreement also secured by the said deed. Subsequently Mrs. Fountain attempted to foreclose her security deed in the state court, and the trustee by supplemental bill obtained an injunction staying those proceedings until the termination of this suit. There was no trial on the merits as to the issue between the complainant and Mrs. Fountain. The case as to the title of Mrs. Daniel to the property was tried in open court, and resulted in a decree in favor of Mrs. Daniel, declaring her to be the owner of the property and dismissing the bill as to both defendants. From this judgment the trustee appeals.

We have carefully considered the evidence in the record, and, notwithstanding the great weight to which the opinion of the trial court is entitled when the judge has seen and heard the witnesses, we are constrained to draw different conclusions from the facts before us. The property in question will be sufficiently described for the purposes

of this opinion as lots 48, 89, 96, 97, and 98 in the town of Swains-boro, Ga.

[1] It is contended by Mrs. Daniel that in 1875 her father, A. S. Kirkland, gave her 500 acres of land in Emanuel county, Ga., and she exchanged it for lot 48. It is shown, however, by deeds and receipts in the record, that in 1878 Mrs. Daniel sold the timber on the 500 acres to George Garbutt for $375, and later, in 1882, transferred to him the fee simple as security for $363, with the agreement that it would be conveyed back to her on the payment of the debt within three years. The debt was evidently not paid, as in 1886, four years later, Garbutt sold the 500 acres to E. H. Edenfield. The same day Edenfield conveyed to him lot 48 here in question. About a year later lot 48 was retransferred from Garbutt back to Edenfield. Thereafter lot 48 was conveyed from the heirs of Edenfield to Victoria McLemore, from her to B. F. Coleman, and from him in turn, in 1891, to H. R. Daniel for the consideration of $1,500. It is impossible to reconcile these recorded facts with the contention of Mrs. Daniel as to lot 48. Both she and her husband testified, and neither denied, she received the purchase price for the 500 acres shown by the deeds and her receipts. Most of the parties and witnesses to the various deeds are dead, but those still living were not called. Under these conditions the recitals of the deeds are conclusive.

It is shown by the deed that H. R. Daniel acquired lots 89, 96, and 97 from J. J. Moring in 1890 for $178.50. With regard to this Daniel testifies he bid them in at auction and received a bond for title, that he could not pay for them, and that his wife agreed to buy them with her own money. His only explanation of why the deed was made in his name is that it was because of the bond for title having issued to him.

H. R. Daniel acquired lot 98 from Victoria McLemore in 1891 for $200. He testifies he personally handed over the purchase money, but says it was his wife's money. It is contended that Mrs. Daniel obtained the money to purchase lots 89, 96, 97, and 98 from the rent of a hotel in Swainsboro; but this property was the lot 48 above referred to, and the testimony is vague and indefinite at best. We find nothing in the record sufficient to show from what source Mrs. Daniel might have obtained her separate funds to make the purchases. It is shown that Daniel held the legal title to the said five lots from April, 1891, to the date of the conveyance complained of, and in August, 1891, mortgaged them to secure his own debt. When this mortgage was foreclosed in 1894, his wife claimed the property, and filed a suit to have herself declared the owner, but did not press it when Daniel paid off the mortgage debt. In 1906 he made a security deed to secure a loan from his daughter. He owned no other property, and in 1912 stated he was worth $12,000 to a bank and was accepted as indorser on the notes of Cook and Fountain, his sons-in-law, for $8,260. The notes fell due in the fall of 1912, were not paid, and on December 12 1912, a receiver in bankruptcy was appointed to Cook and Fountain. Just one week later, on December 19, 1912, the deed herein complained of was executed.

There is the hearsay testimony of a number of witnesses in the record that Mrs. Daniel had claimed to be the owner of the property, and it was generally considered hers; but as against this is the significant allegation of her daughter's answer:

"On November 3, 1906, this defendant dealt with said Henry R. Daniel as the owner of the lands mentioned in said two paragraphs, and at that time believed him to be the true and lawful owner thereof."

The daughter did not testify.

[2] In Seitz v. Mitchell, 94 U. S. at page 582, 24 L. Ed. 179, the Supreme Court said:

"Purchases of either real or personal property, made by the wife of an insolvent debtor during coverture, are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife, such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her, which she must overcome by affirmative proof."

The above remarks are particularly applicable to the state of facts disclosed by this record. Except for the bald statements of the husband and wife that the purchases were made with the wife's money, there is nothing to show she did pay or could have paid for the property with her separate estate. The husband was confessedly insolvent at that time, and the deed is admitted to be without consideration. Upon all the facts the wife has failed to sustain the burden of showing that the equitable title was in her at any time.

[3] There is also another view of the case not unworthy of consideration. It is conclusively shown that for years Daniel held himself out to be the owner of the property to the knowledge of his wife, and refused to admit she had any interest in it. He returned it for taxation in his own name, and obtained credit on the strength of his ownership. In Humes v. Scruggs, 94 U. S. 22, 24 L. Ed. 51, a case practically on all fours with this one, the Supreme Court had this to say:

"If the money which a married woman might have had secured to her own use is allowed to go into the business of her husband, and be mixed with his property, and is applied to the purchase of real estate for his advantage, or for the purpose of giving him credit in his business, and is thus used for a series of years, there being no specific agreement when the same is purchased that such real estate shall be the property of the wife, the same becomes the property of the husband for the purpose of paying his debts. He cannot retain it until bankruptcy occurs, and then convey it to his wife. Such conveyance is in fraud of the just claims of the creditors of the husband."

Appellee relies principally on the case of Garner v. Bank, 151 U. S. 420, 14 Sup. Ct. 390, 38 L. Ed. 218, cited with approval by the District Court as overruling the Seitz and Humes Cases, supra; but in that case the burden of showing that the property had been purchased with the separate money of the wife was fully sustained, and the court concluded the wife had done nothing to estop her. It is true the Supreme Court in that case gave full force and effect to the testimony of the husband and wife. All things considered, we are in-

clined to give equal force to the testimony of the spouses in this case; but their evidence is bare of the essential facts necessary to support their contentions.

The decree is reversed, and the cause remanded, with directions to enter a decree in favor of complainant as against Mrs. J. Addie Daniel in accordance with this opinion, and for such other proceedings as may be necessary.