EVANS et al. v. BELL.

(Court of Appeals of District of Columbia. Submitted January 7, 1920. Decided March 1, 1920.)

No. 3283.

1. FRAUDULENT CONVEYANCES ⊗⊃278(2)—WIFE, TO WHOM DEBTOR CONVEYS PROPERTY, MUST PROVE RIGHT THERETO.

Where a debtor conveys all his property to his wife, the burden is on her to prove distinctly and satisfactorily her right thereto.

2. FRAUDULENT CONVEYANCES ⊗⊃104(1)—CONVEYANCE TO WIFE VIEWED WITH SUSPICION AND REQUIRES CLOSE SCRUTINY.

A conveyance by a debtor of all his property to his wife is viewed by the law with grave suspicion, and requires close scrutiny at the hands of a court of equity.

3. HUSBAND AND WIFE ⊗⊃133(7)—EVIDENCE INSUFFICIENT TO SHOW PROPERTY WAS PURCHASED WITH MONEY OF DEBTOR'S WIFE.

In a suit to set aside a conveyance by a debtor to his wife of his only property, evidence held insufficient to show that the property was paid for with her money.

4. EVIDENCE ⊗⊃77(1)—FAILURE TO CALL WITNESSES CLAIMED TO HAVE KNOWLEDGE RAISES UNFAVORABLE PRESUMPTION.

Where a party has it in his power to call certain witnesses who, he claims, are familiar with the subject being investigated, and fails to do so,

there is a presumption that their testimony, if called, would not be favorable to his case.

5. FRAUDULENT CONVEYANCES ☞64(2)—DEBTOR CHARGED WITH INTENT TO DEFRAUD, WHERE NATURAL CONSEQUENCE OF CONVEYANCE.

As the natural and probable consequence of a conveyance by a debtor to his wife of the only property owned by him at the time was to delay, hinder, and defraud a creditor, he must be held to have so intended.

Appeal from the Supreme Court of the District of Columbia.

Suit by Alexander H. Bell against Illtyd C. I. Evans and another. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

W. M. Ellison, of Washington, D. C., for appellants.

Geo. C. Gertman, of Washington, D. C., for appellee.

SMYTH, Chief Justice. Bell recovered a judgment by default against Illtyd C. I. Evans for money loaned to him, and, after an execution was returned nulla bona, instituted a suit in equity to set aside a conveyance of real estate from Evans to his wife, the other appellant, and to subject the property to the payment of the judgment. From a decision granting him the relief prayed, defendants appeal.

At the time the indebtedness was incurred by Evans he was engaged in business and owned some houses in Washington, besides being the record owner of the property which forms the subject of this suit. In December, 1915, seven months after he had borrowed the money, he conveyed the last-mentioned property to his wife for the stated consideration of $10, "love, and affection." In the meantime he had disposed of the other property, and hence by the conveyance to his wife he stripped himself of all property which might be reached for the satisfaction of the indebtedness. Bell urges that the conveyance was entirely voluntary, and made for the purpose of delaying, hindering, and defrauding Evans' creditors. The defendants, on the other hand, contend that the property had been purchased originally with the wife's funds, and the title taken inadvertently in the husband's name, and that the conveyance to the wife was simply the placing of the legal title where in equity it belonged.

[1, 2] It is a well-settled rule of law that where the husband, being indebted, conveys all his property to his wife, as here, the burden is on her to prove distinctly and satisfactorily that she is entitled to the property. Such a transaction is viewed by the law with grave suspicion, and requires close scrutiny at the hands of a court of equity. Flint v. Chaloupka, 78 Neb. 594, 597, 111 N. W. 465, 13 L. R. A. (N. S.) 309, 126 Am. St. Rep. 639; Seitz v. Mitchell, 94 U. S. 580, 583, 24 L. Ed. 179; Owens v. Daniel, 230 Fed. 101, 104, 144 C. C. A. 399; Klinger v. Hyman, 223 Fed. 257, 265, 138 C. C. A. 499; Miller v. Gillispie, 54 W. Va. 450, 46 S. E. 451; Gates v. Card, 93 Tenn. 334, 24 S. W. 486; Kline v. Kline, 103 Va. 263, 48 S. E. 882. Appellants have not directed our attention to any authority announcing a different rule. They refer to Pomeroy's Eq. Juris. (3d Ed.) § 1037, and certain decisions, which say in effect that, where property is purchased with the funds of one person and the legal title is taken in the name

of another, a trust will result in favor of the former. But that principle is not disputed here. The question before us is whether or not the wife has proved by the required quantum of evidence that she paid the purchase price.

[3] There are two pieces of property involved, a house and lot, and an adjoining lot. The former cost $7,200, and the latter $700; $500 was paid down on the house, and $300 on the additional lot. The purchase of the house was made before that of the adjoining lot. They were separate transactions, and in each case the title was taken in the name of the husband. While he held the title he borrowed $800 on one of the lots, presumably the one on which the home stood. It is not recorded that the wife made any objection to this use of the property, or that she did not know of it. This is significant.

For five years before her marriage, the wife says, her four brothers, one sister, and her future husband boarded with her; that through this means she accumulated a sum of money, which she loaned to her brother-in-law, and that when she married she called in the loan and applied the money on the purchase price of the property; also that the money used in making subsequent payments was derived from her business as a keeper of boarders. She did not remember whether the money lent to her brother-in-law was paid back by check or in cash, and the brother-in-law was not called to testify. He was in France at the time of the trial, but no motion was made to continue the case until he returned, or his deposition could be taken. Neither was she able to say when she loaned the money to him, or what he used it for; nor did she remember whether she turned her money over to her husband, to be applied by him on the purchase price, or paid it directly to the person from whom the property was purchased. She could not tell whether she had a written agreement for the purchase of the property or not, or whether the transactions were closed at her home or at the office of Seers, the real estate dealer. The latter, she said, well knew that she was buying the property; but she could not tell why he made the deed to her husband, instead of to her.

The husband said that his wife turned the purchase money over to him, that he deposited it in his own name, but that he did not remember whether he paid for the property by check or in cash. He had no canceled checks, and the bank records were not produced. Later he said he was not sure whether he or his wife gave a check for the $500 to Seers. He testified that his wife's people all knew that the property belonged to her and that Seers could prove it; but none of his wife's people, nor Seers, nor any of the officials of the bank where he did business was called, and no reason is given for defendants' failure to call them.

[4] Generally, where a party has it in his power to call certain witnesses who, he claims, are familiar with the subject being investigated, and fails to do so, there is a presumption that their testimony, if they were called, would not be favorable to his case. MacConnell v. Wood, 47 App. D. C. 424. That rule is applicable here. The defendants were the only witnesses. They gave no reason why the title to the property was taken in the husband's name, if it was not his, and permitted to

remain there for nearly five years, and until he became financially embarrassed. We are constrained to say that the testimony presented by the appellants is unreliable, and, when studied in the light of the circumstances disclosed by the record, fails to establish, with that convincing force which the law requires, that the property was not the husband's but the wife's at the time he made the conveyance.

[5] Being the owner of the property in suit, and having no other property at the time, Evans' conveyance, we believe, was made for the purpose of delaying, hindering, and defrauding his creditor, Bell. That was the natural and probable consequence of what he did, and he must be held to have intended it. Barber v. Wilds, 33 App. D. C. 150.

The judgment of the lower court is affirmed, with costs.

Affirmed.