**In re Estate of Jacob S. WALL.**

**Sol M. ALPHER et al., Appellants,**

v.

**Nathaniel A. PRESTON, Administrator C.T.A. of the Estate of Jacob S. Wall, also known as Jack Wall, Deceased.**

**No. 22507.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1970.

Decided Feb. 23, 1971.

Mr. Robert B. Frank, Washington, D. C., for appellants.

Mr. Jack A. Hillman, Washington, D. C., for appellee.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

At issue is the ownership of a fund in which a deceased husband had an interest during his lifetime, and for which his widow and two of his creditors are now arrayed as competitors. The fund, consisting of the net proceeds of a sale of District of Columbia realty in 1963, is on deposit in an account in the names of Jacob S. Wall, the decedent, and Frances P. Wall, the widow, as tenants by the entireties.[1] Mr. Wall died in 1965 and his estate has since been in administration under supervision of the District Court.

In 1968, appellants, who are among Mr. Wall's creditors, petitioned the court for an order requiring appellee, the administrator *cum testamento annexo*, to take over the fund as an asset of the estate. The petition alleged that Mr. Wall was insolvent at death, and it envisioned further litigation to establish the rights of the parties in the fund.[2] The court ordered appellee to show cause and, after a hearing, denied the petition. This appeal followed.

Appellants contend that although they are creditors of an insolvent estate, they

[1] There were also, at Mr. Wall's death, parcels of District real estate which the Walls had acquired in 1936 and 1942 as tenants by the entireties, and to which Mrs. Wall lays claim as surviving cotenant. They are not involved in this case.

[2] A similar effort in 1967, by appellant Alpher alone, seems to have foundered on a ruling that the District Court's probate jurisdiction did not extend to the determination of conflicting property claims. See Jones v. Dunlap, 73 App.D.C. 59, 115 F.2d 689 (1940). After our decision in Price v. Williams, 129 U.S.App.D.C. 239, 242–243, 393 F.2d 348, 351–352 (1968), both appellants made the second try. But see Anderson v. Pinkett, 142 U.S.App. D.C. ——, 439 F.2d 619 (1971), decided after the case at bar was submitted.

We are not, however, faced with the question involved in those cases. Appellants have not sought to compel Mrs. Wall to pay the deposited fund into court; indeed, she was not even made a party to the show cause proceeding. Rather, appellants asked the District Court, sitting as the Probate Court, to direct the administrator of the estate to take action to gain possession of the fund. That effort was nothing more than an invocation by estate creditors of the Probate Court's undoubted authority to instruct a personal representative as to his duties. Compare Heilman v. Ginberg, 109 U.S.App.D.C. 105, 284 F.2d 239 (1960). The question as to the forum in which the personal representative might properly bring his action was never reached. Had it been reached in consequence of sustaining appellants' position on the order to show cause, it would have been for the Probate Court to instruct in that regard too.

were precluded by the District Court's ruling from proving that the fund, or at least a one-half interest therein, belonged to the estate. They argue that they were barred from offering such proof simply because the deposit was titled in the Walls as tenants by the entireties.[3] On close review of the record, however, we think appellants faced much more formidable obstacles. Standing out in bold relief is the fact, alleged by appellee and not disputed by appellants, that the Walls had also held the real estate, from the sale of which the fund was derived, as tenants by the entireties.[4] Further, evidence, such as it was but never contradicted, indicated a plan whereby the sale proceeds were deposited, in that form of cotenancy, as substituted security for an indebtedness previously secured by the lien of a deed of trust on the realty.[5] The question, then, is whether, in light of these additional circumstances, appellants made enough of a showing in the District Court to develop a triable issue as to the ownership of the fund. Concluding that they did not,[6] we affirm.

## I

The estate by the entireties subsists in the District of Columbia with its most distinctive common law features still intact.[7] "The tenancy by entireties," this Court has observed, "is essentially a joint tenancy, modified by the common-law theory that husband and wife are one person."[8] While the common law concept

3. See text *infra* at notes 21–23.

4. See also note 5, *infra*, and accompanying text.

5. Filed as an exhibit to appellee's opposition to the first petition, upon which appellee relied in answer to the second, see note 2, *supra*, was an unchallenged letter from Mr. Wall, dated January 15, 1963, to the title company conducting settlement of the sale, in which he declined to sign a document, to which apparently Mrs. Wall had already agreed, purporting to set up a trusteeship for the distribution of the sale proceeds. In the letter, Mr. Wall stated that "[t]he sale herein was not motivated by intent or agreement on my part to terminate or partition the estate held as a tenancy by the entireties. Its purpose was to avert imminent foreclosure." Mr. Wall concluded the letter:

> The Perpetual Building Association consenting, it is asked that the entire net proceeds of the sale be delivered to the Perpetual Building Association to be placed on deposit with it in the name of "Jacob Wall and Frances P. Wall, tenants by the entireties" and stand pledged to it as substituted security for the specific real estate required by our contract to be released from the Deed of Trust of March 16, 1956. * * *

6. See Part III, *infra*.

7. See Coleman v. Jackson, 109 U.S.App. D.C. 242, 243, 286 F.2d 98, 99 (1960); Settle v. Settle, 56 App.D.C. 50, 51, 8 F.2d 911, 912 (1925); Flaherty v. Columbus, 41 App.D.C. 525, 529 (1914); Loughran v. Lemmon, 19 App.D.C. 141, 147 (1901). See also D.C.Code § 5–905 (1967). Joint tenancies, see Coleman v. Jackson, *supra*, and tenancies in common, see Second Realty Corp. v. Krogmann, 98 U.S.App.D.C. 283, 235 F.2d 510 (1956), subsist also. And see D.C.Code § 45–816 (1967). The fourth common law form of co-ownership—tenancy in coparcenary—has been abolished, however, and tenancy in common substituted for it. D.C.Code § 45–817 (1967).

8. Settle v. Settle, *supra* note 7, 56 App.D.C. at 51, 8 F.2d at 911. See also Coleman v. Jackson, *supra* note 7, 109 U.S.App.D.C. at 243, 247, 286 F.2d at 99, 103; Tendrich v. Tendrich, 90 U.S.App.D.C. 61, 63, 193 F.2d 368, 369, (1951); Fairclaw v. Forrest, 76 U.S.App.D.C. 197, 200, 130 F.2d 829, 832, 143 A.L.R. 1154 (1942), cert. denied, 318 U.S. 756, 63 S.Ct. 531, 87 L.Ed. 1130 (1943). As we said in *Fairclaw*:

> Next to primogeniture, unity of husband and wife was perhaps the common law's most characteristic institution. Tenancy by entirety epitomized the idea. Uniting the conceptions of the marital entity and joint tenancy, it brought the latter to a climax. The spouses were properly neither joint tenants, nor tenants in common, for husband and wife being considered as one person they could not hold the estate by moieties as joint tenants, *per tout et per my*, but both were seised of the entirety, *per tout et non per my*. The consequence of this was a union of husband and wife in the estate so that neither could dispose of any part without the assent of the other and the whole remained to the survivor. *Id.* at 200, 130 F.2d at 832.

of marital unity has been abolished legislatively,[9] the peculiar advantages which the estate by the entireties offers its owners have sustained it in this jurisdiction and elsewhere as an ongoing and popular arrangement between husband and wife.[10] We ourselves have recognized that the marital relation is well served by a form of coownership safeguarding marital property from legal hazards which other types leave as exposures.[11] And in the protection tenancy by the entireties affords the marital partners,[12] we have found solid justification for its continued existence in modern society.[13]

So it is with us today that the full complement of common law characteristics of cotenancy by the entireties is preserved. A unilaterally indestructible right of survivorship,[14] an inability of one spouse to alienate his interest,[15] and, importantly for this case, a broad immunity from claims of separate creditors[16] remain among its vital incidents. Property so held is, of course, liable for the spouses' joint debts,[17] and for the individual debts of the surviving cotenant.[18] But as long as the coverture is whole, an estate by the entireties unimpeachable at inception is unreachable by legal process at the instance of creditors of one but not of both.[19] And it matters

9. See D.C.Code § 30–201 *et seq.* (1967), derived from a series of statutes commencing with the Married Women's Property Act, 16 Stat. 45 (1869). See also *Bronson v. Brady*, 28 App.D.C. 250 (1906).

10. As to the status of the tenancy by the entireties in the United States, see 4 R. Powell, Real Property ¶ 623 at 695–706 (1967).

11. These safeguards include prominently the indestructibility of the estate and the right of survivorship by the sole act of one spouse during coverture, and the nonliability of the property for individual debts of the first dying spouse. See text *infra* at notes 14–19.

12. As is well known, tenancy by the entireties can exist only between husband and wife. *Coleman v. Jackson, supra* note 7, 109 U.S.App.D.C. at 243; 286 F.2d at 99; *Tendrich v. Tendrich, supra* note 8; *Fairclaw v. Forrest, supra* note 8, 76 U.S.App.D.C. at 201, 130 F.2d at 833. See also D.C.Code § 5–905 (1967); *Cobb v. Gilmer*, 124 U.S.App.D.C. 398, 399–400, 365 F.2d 931, 932–933 (1966).

13. See *Fairclaw v. Forrest, supra* note 8, 76 U.S.App.D.C. at 201–202; 130 F.2d at 833–834.

14. *Coleman v. Jackson, supra* note 7, 109 U.S.App.D.C. at 243, 286 F.2d at 99; *Flaherty v. Columbus, supra* note 7, 41 App.D.C. at 530. Survivorship incidental to joint tenancy differs because it may be frustrated, wholly or partly, by alienation or subjection to debts of a cotenant's undivided share or by compulsory partition. See 4 R. Powell, Real Property ¶ 618 at 672–679 (1967).

15. *Coleman v. Jackson, supra* note 7, 109 U.S.App.D.C. at 243, 286 F.2d at 99; *Fairclaw v. Forrest, supra* note 8, 76 U.S. App.D.C. at 200, 201–202, 130 F.2d at 832, 833–834; *American Wholesale Corp. v. Aronstein*, 56 App.D.C. 126, 127, 10 F.2d 991, 992 (1926). We speak not in reference to the husband's common law interest *jure uxoris*, which the married women's property legislation has eliminated. See *Fairclaw v. Forrest, supra,* 76 U.S.App.D.C. at 200–201, 130 F.2d at 832–833; *Deschenes v. McFerren*, 125 A.2d 386, 387 (D.C.Mun.App.1956).

16. *Fairclaw v. Forrest, supra* note 8, 76 U.S.App.D.C. at 201–202, 130 F.2d at 833–834; *American Wholesale Corp. v. Aronstein, supra* note 15, 56 App.D.C. at 127–128, 10 F.2d at 992–993.

17. *Fairclaw v. Forrest, supra* note 8, 76 U.S.App.D.C. at 201 n. 3, 130 F.2d at 833 n. 3; *White v. Parnell*, 130 U.S.App. D.C. 148, 397 F.2d 709 (1968).

18. *Fairclaw v. Forrest, supra* note 8, 76 U.S.App.D.C. at 201, 130 F.2d at 833; *Murphey v. C.I.T. Corp.*, 347 Pa. 591, 33 A.2d 16, 18 (1943); *Vasilion v. Vasilion*, 192 Va. 735, 66 S.E.2d 599, 603 (1951).

19. *American Wholesale Corp. v. Aronstein, supra* note 15, 56 App.D.C. at 127, 10 F.2d at 992. In that case, property paid for by a husband was conveyed to him and his wife as tenants by the entireties at a time when the husband apparently was solvent. About three years later, being then insolvent, the husband conveyed his interest in the property to the wife. Judgment creditors charged that this conveyance, and as well the original conveyance, were in fraud of creditors, but

not in this jurisdiction whether the subject matter is real or personal since we recognize the estate, with the same qualities, in each.[20]

This is not to say, however, that rights and remedies of existing creditors can be obliterated by the simple expedient of erecting a tenancy by the entireties in property that is otherwise vulnerable. Husband and wife, of course, take the property subject to liens burdening it when the tenancy is born; beyond that, when such tenancies are created, the legal rules imperiling conveyances that hinder, delay or defraud creditors[21] must be respected.[22] If the interspousal transaction happens to infringe those rules, it is open to attack by affected creditors,[23] and herein appellants' salvation is to be found, if at all.

## II

Uncontested allegations and representations in the record establish several circumstances that bear critically on the questions before us. The real estate, from the sale of which in 1963 the fund in litigation arose, was owned by the Walls as tenants by the entireties. The sale was not prompted by any purpose, at least on Mr. Wall's part, to dissolve that arrangement, but rather by an understandable inclination to rescue the Walls' investment from a foreclosure then imminent.[24] Mr. Wall desired the same type of ownership of the proceeds, and was opposed to any change,[25] whatever Mrs. Wall's wishes on that score might have been.[26] He advocated, too, a deposit of the proceeds in the names of both spouses as "tenants by the entireties,"[27] and unquestionably that was done.

The record discloses nothing that would serve to impeach, at the suit of creditors, the estate by the entireties which the Walls shared in the realty prior to its sale. It does not suggest that Mr. Wall was in financial straits when the estate came into being, or that he was then indebted to either appellant.[28] We know from Mr. Wall's letter that a foreclosure was threatened in 1962 when the Walls contracted to sell the property,[29] but that fact sheds no light on their financial situation when it was acquired. Thus, from aught that appears, or that appellants proffered in the District Court, the Walls' tenancy by the en-

---

this court held that they were not:

At the time when the original conveyance was made to Aronstein [the husband] and his wife, the former was solvent, and moreover the claims of the appellants against him were not then in existence. Accordingly the appellants cannot attack that conveyance. As to the conveyance subsequently made by Aronstein to his wife, the estate was held by them as tenants by the entireties, and the appellants were not entitled to subject the separate interests of Aronstein to the payment of their claims. His conveyance to his wife accordingly could not hinder or delay them in the collection of their judgments.

56 App.D.C. at 127, 10 F.2d at 992.

20. Tendrich v. Tendrich, *supra* note 8, 90 U.S.App.D.C. at 62 n. 2, 193 F.2d at 369 n. 2; Flaherty v. Columbus, *supra* note 7, 41 App.D.C. at 529.

21. See D.C.Code § 28–3101 (1967). See also Harding v. Aaronson, 63 App.D.C. 107, 108, 69 F.2d 845, 846 (1934); Evans v. Bell, 49 App.D.C. 238, 239, 263 F. 634, 635 (1920).

22. See American Wholesale Corp. v. Aronstein, *supra* note 15, 56 App.D.C. at 127, 10 F.2d at 992. See also Imirie v. Imirie, 100 U.S.App.D.C. 371, 372–373, 246 F.2d 652, 653–654 (1957). Cf. Bankruptcy Act § 70(a), 11 U.S.C. § 110(a) (1964).

23. See American Wholesale Corp. v. Aronstein, *supra* note 15, 56 App.D.C. at 127, 10 F.2d at 992.

24. See note 5, *supra*.

25. See note 5, *supra*.

26. See note 45, *infra*, and accompanying text.

27. See note 5, *supra*.

28. Neither appellant entered into litigation prior to 1967, see note 2, *supra*, and accompanying text, and neither has supplied the details of his claim for the record.

29. See note 5, *supra*.

tireties therein was beyond attack by separate creditors.[30]

■ It was, moreover, within the Walls' power to maintain in the sale proceeds the same estate they had in the realty. Where, as in the District of Columbia, personalty can be held by the entireties,[31] the great weight of authority is to the effect that, absent a contrary arrangement by the parties, an estate by the entireties preexisting in particular property continues automatically in its derivatives on disposition.[32] That rule has been applied in a variety of contexts,[33] including cash sales of realty[34] such as we have here. In this jurisdiction, the rule has been given specific application, in a situation similar to that now presented, over the protests of separate creditors.[35]

■ This, we think, is as it should be. The rule continuing in derivatives the estate previously subsisting in the realty subserves the policy justifying present-day ownership by the entireties and enjoyment of its related incidents.[36] We perceive nothing in reason or legal principle to oppose it. And since the estate in the derivative is an extension of the estate, and not an interest newly created,[37] the rule does not operate to alter, one way or the other, the rights of existing creditors. We conclude, then, that absent a different treatment by the Walls, they held the sale proceeds as tenants by the entireties in prolongation of their preexisting cotenancy in the realty, and held it free from the claims of separate creditors of either.

### III

The question remains, then, whether the Walls modified their ownership of the proceeds so as to carve the fund on deposit into separate though undivided shares. In the District Court, in support of the order to show cause, appellants stated—and this was their sole proffer—that at an evidentiary hearing they would submit proof that the Walls had been separated since 1949, that Mr. Wall had filed a separate federal income tax return for 1963, and that in it he had reported as income the capital gain from the sale and the interest accruing on the

30. See text *supra* at notes 16–23.

31. See note 20, *supra*, and accompanying text.

32. See the cases cited *infra* notes 33–34. See also the cases collected in Annot., 64 A.L.R.2d 8, 47–62 (1959).

33. See, *e. g.*, Cummings v. Greif Bros. Cooperage Co., 202 F.2d 824, 829 (8th Cir. 1953) ; (cut timber, and claim for damages for conversion thereof) ; Cooper v. Cooper, 225 Ark. 626, 284 S.W.2d 617, 620 (1955) (proceeds of insurance) ; Carlisle v. Parker, 38 Del. 83, 188 A. 67, 69–70 (1936) (surplus from mortgage foreclosure) ; Dorf v. Tuscarora Pipe Line Co., 48 N.J.Super. 26, 136 A.2d 778, 782 (1957) (proceeds of insurance) ; In re Bramberry's Estate, 156 Pa. 628, 27 A. 405, 407, 22 L.R.A. 594, 36 Am.St. Rep. 64 (1893) (purchase money mortgage) ; Citizens' Sav. Bank & Trust Co. v. Jenkins, 91 Vt. 13, 99 A. 250, 253 (1916) (cut timber).

34. See, *e. g.*, Smith v. Tipping, 349 Mass. 590, 211 N.E.2d 231, 232 (1965) ; Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55, 58 (1940) ; Oliver v. Givens, 204 Va. 123, 129 S.E.2d 661, 663 (1963) ; Crawford v. United States Fidelity & Guar. Co., 139 So.2d 500, 501–502 (Fla. App.1962).

35. Held v. McNett, 154 A.2d 349 (D.C. Mun.App.1959).

36. See text *supra* at notes 9–13.

37. See Held v. McNett, *supra* note 35, where the point is neatly illustrated. Creditors of a partnership attached the proceeds arising from the sale by McNett, one of the partners, and his wife of real estate owned by them as tenants by the entireties. The trial court quashed the attachment and the creditors, on appeal, argued that "the proceeds of the sale were in a 'conduit' (the title company), subject to the separate claims of McNett and his wife, who because they had taken no action to define their interest in the fund or create an entirety interest therein had nothing more than an estate in common." 154 A.2d at 350. The appellate court rejected that argument, which it could not have done unless the McNetts' estate in the proceeds was merely a continuation of their estate in the realty.

deposit. But no more than the District Court could we accept such a showing as proof that the parties had mutually undertaken to dissolve what otherwise would have been a tenancy by the entireties in the deposited fund.

■ Mere separation is not tantamount to divorce, and only some kind of divorce can terminate the marital relation which is indispensible to ownership by the entireties.[38] We cannot assume that undivorced marital partners would normally desire to forego the advantages of an existing tenancy by the entireties simply because they are unwilling to share the same roof. Nor do we consider Mr. Wall's method of reporting 1963 income for tax purposes inconsistent with a continuing cotenancy of that type in the fund.

It was the parties' option to file either joint or separate federal income tax returns.[39] No real significance can be attached to so common an occurrence as the filing of a separate return, particularly when the spouses live apart. And the record tells us why Mr. Wall filed a separate return embracing the entire income. A letter written by his accountant [40] referred to a large tax arising from the capital gain on the sale, for the payment of which the deposited fund ostensibly constituted the only available source, and proposed a course of action involving a withdrawal by mutual agreement coupled with a promptly filed return by Mr. Wall. The letter also disclosed that Mrs. Wall opposed withdrawals without some sort of settlement in her favor.[41] His tax technique thus emerges as an expedient to enable discharge of a responsibility which was not wholly his. And the difficulty Mr. Wall experienced in getting to the money on deposit hardly assists the argument that the parties had separate shares in the fund.

Even more relevant, we think, are the uncontradicted circumstances surrounding the deposit. The record shows affirmatively that, whatever Mrs. Wall's inclination as to the division of the fund,[42] Mr. Wall would have no part of it. He declared unequivocally his desire not "to terminate or partition the estate held as a tenancy by the entireties;" [43] he disdained a trusteeship for distribution of the sale proceeds, and recommended their deposit in both parties' names as tenants by the entireties in order that they might "stand pledged * * * as substituted security for the specific real estate required by our contract [of sale] to be released from the" lien of a specified deed of trust.[44] True it is that the record does not explicitly show such a security arrangement, but the fact that, in lieu of a distribution, the proceeds were deposited just as Mr. Wall requested suggests that his wishes were fully respected.[45] We are unable to see how the neb-

38. See note 13, *supra*.

39. Treas. Reg. 1-.6013-4(a) (2) (1959), applicable for the years in question.

40. The accountant is one of the appellants here.

41. See note 45, *infra*.

42. See note 45, *infra*.

43. See note 5, *supra*.

44. See note 5, *supra*.

45. While Mr. Wall made explicit his opposition to any division of the sale proceeds, Mrs. Wall's position, as we have indicated, was somewhat more ambiguous. But it matters not that, contrary to Mr. Wall, she may have wanted the fund divided. "Presumably, * * * husband and wife may agree to split the estate [by the entireties preexisting in the realty] of its attributes and create a new and wholly different type of ownership [in the proceeds from its sale]; *but it would have to be done jointly.*" Held v. McNett, *supra* note 35, 154 A.2d at 350 (emphasis supplied). This but recognizes a fundamental characteristic of tenancy by the entireties, be it in real or personal property: the inability, while the coverture subsists, of one spouse to force a partition of the subject property upon the other. Coleman v. Jackson, *supra* note 7, 109 U.S.App.D.C. at 243, 286 F.2d at 99; Tendrich v. Tendrich, *supra* note 8, 90 U.S.App.D.C. at 61, 193 F.2d at 368; American Wholesale Corp. v. Aronstein, *supra* note 15, 56 App.D.C. at 127, 10 F.2d at 992; Settle v. Settle, *supra* note 7. See also D.C.Code § 16-1301 (1967).

ulous inferences appellants seek to draw from the Walls' separation and from Mr. Wall's 1963 tax return could reasonably be accepted by a finder of the facts in preference to what other facts rather plainly indicate.

The case would be different if the circumstances surrounding the deposit had aroused a suspicion of fraud on creditors.[46] So it would also be if appellants had proffered evidence that might establish some ground from which the administrator might legitimately have launched an attack on the deposit arrangement. The record indicates satisfactorily, however, that the Walls' cotenancy in the fund was free from taint, and what appellants advanced fell short of posing a meritorious challenge to the fund on deposit. The District Court was entirely right in viewing the situation before it as one lacking justification for the requested direction to appellee, or for a full-scale evidentiary hearing on the order to show cause.

The order appealed from is accordingly

Affirmed.

---

46. See Harding v. Aaronson, *supra* note 21, 63 App.D.C. at 108, 69 F.2d at 846; Evans v. Bell, *supra* note 21, 49 App. D.C. at 239, 263 F. at 635.